# The Chicago Dock Company

### *v.*

## Juliette A. Kinzie.

1. Dower—*release of—may be made—to a purchaser from the owner of the fee.* In a proceeding, by the widow of K, against O, for an assignment of dower in certain premises, the proof showed that K, her husband, conveyed the property to J, but that, by this deed, there was no relinquishment of dower. Subsequently, J conveyed the premises to H, who gave his notes for the purchase price, secured by a deed of trust upon the premises. H made this purchase, and took a conveyance in his own name, under a verbal agreement with O, that O should make the first three payments, and that if H made the last payment, he should have one-fourth of the property, and if O made all the payments, he was to take the whole. O entered into possession of the premises and made all the payments. When O had paid one-half of the purchase price, K and wife conveyed the premises to him, by which deed petitioner released her right of dower in the same, and afterwards O and H conveyed the property to C. K died about eight years after this latter conveyance. *Held,* that O, at the time of the execution to him of the deed by K and the petitioner, held such an interest in the premises as enabled him to become the releasee of the dower right, and that such deed operated to bar petitioner's right to recover dower in the premises.

2. Statute of frauds—*parol contract for the purchase of lands—as between the parties—equity will enforce—unless the statute is pleaded.* That, by the verbal agreement between O and H, an express trust was created, which, had O filed his bill against H to have executed, a court of equity would have enforced, unless H had interposed the statute of frauds as a defense.

3. Same—*statute can not be pleaded by strangers to the contract.* That petitioner, being a stranger to this agreement, can not object, that because it was not in writing it is, therefore, void under the statute of frauds. This statutory defense is personal, and can not be made by persons who are neither parties nor privies to the agreement.

4. Former decisions. In the cases of *Blain* v. *Harrison,* 11 Ill. 384, and *Summers* v. *Babb,* 13 ib. 483, the rule is too broadly stated, if it was intended to hold that the right of dower can only be released to the owner of the fee.

5. Dower—*to whom it may be released.* Dower may be released to the owner of the fee, or to a person in privity with the estate, who can not assert the dower right against the owner of the fee. Hence, a tenant of the freehold, an equitable owner, a purchaser from the owner of the fee, although his contract be

37—49th Ill.

unexecuted, or one who has warranted the title, may become a releasee of the dower right.

6. CHANCERY PLEADING—*variance between the proof and answer.* And in this case, it is no objection that the evidence varies from the answer of the defendants, the material allegation therein, and which constituted a good defense, having been proved.

7. And in such case, the proof showing that the petitioner, on two occasions, attempted to divest herself of this right, and that in each instance, she and her husband received a satisfactory consideration for its relinquishment, under such circumstances, nothing but the stern and inflexible rules of law should entitle her to dower in the premises.

APPEAL from the Superior Court of Chicago.

The opinion states the case.

Messrs. SCAMMON, McCAGG & FULLER, for the appellants.

Messrs. MILLER, VAN ARMAN & LEWIS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a petition filed by appellee, in the Superior Court of Chicago, against appellants, for the assignment of dower in lot thirty-five and its accretions, in Kinzie's addition to the city of Chicago. It appears that appellee was married to John H. Kinzie in 1833, and that he died in June, 1865; that Robert A. Kinzie owned the premises, and on the 25th of February, 1833, conveyed them to John H. Kinzie; that on the 1st day of September, 1834, he and appellee conveyed the premises in question to William Jones for a valuable consideration. It however appears that the certificate of acknowledgment to this deed was defective, and was insufficient to bar appellee's right of dower in the premises.

On the 15th day of July, 1856, William Jones conveyed this lot to Van H. Higgins, for the sum of one hundred and

fifty thousand dollars; subsequently, on May 23d, 1857, Jones executed another deed to Higgins for the same property, and on the 10th day of November, 1857, Higgins conveyed to appellants for the consideration expressed in the deed of three hundred and seventy-five thousand dollars.

The evidence shows that Higgins made the purchase in his own name, but under an arrangement with William B. Ogden that the latter should make the first three payments, and if Higgins should make the last he should have one-fourth of the property, and if not, Ogden was to have all of it. Higgins made no payment, and the whole lot was conveyed to appellants, and Ogden made all of the payments. It also appears that at the time Higgins made the purchase, he received the deed, gave his notes for the deferred payments, and executed a deed of trust to Jones to secure their payment, and Ogden thereupon entered into possession, and so continued, until the company entered upon the improvements that they are constructing upon the lot.

After Ogden had made two payments,—or had paid one-half of the purchase money,—he received a deed of conveyance from John H. Kinzie and appellee. This deed, although it bore a prior date, was acknowledged, and appellee, in due form, relinquished her right of dower in the premises, on the 19th day of November, 1857, and appellants rely upon this deed to bar appellee's right to recover dower in the premises. But, on the other side, it is contended that it could not have the effect to bar her dower, because Ogden was not the owner of the fee, either in law or in equity, and hence, was a stranger to the title, and could not receive a release of her right of dower.

Appellants contend that, as Ogden was a purchaser and in possession, although he had paid but a portion of the purchase money at the time the release was made, he had such an equitable interest in the land as enabled him to receive the release. The whole controversy turns upon this question. At the

292          CHICAGO DOCK CO. *v.* KINZIE.          [Sept. T.,

Opinion of the Court.

common law, a chose in action, or a mere right of recovery could not be assigned, nor could a release be made to a person who had no interest in the subject matter to which it related. Hence, to render a release effective, it was necessary that the releasee should own the title to the right or property to which the release related; hence, the release of a term, incumbrance or other right, could only be made to a privy in law or in title. The same rule governed the claim of dower, before it was admeasured and assigned to the dowress. She could not release or transfer her right, before assignment, to a stranger to the title to the land. But in Lampet's case, 10 Coke, 48, it was held that a release may be made to the tenant of the freehold, in fact or in law, without privity, the remainder-man, the reversioner without privity, to a person having right by reason of privity, and to the person having right without privity. The question, then, presents itself, whether Ogden, as the purchaser, in fact, occupied either of the relations referred to in Lampet's case. Was he in privity in deed or in estate? If so, then he was capable of receiving the release, so as to bar the widow's dower.

It is objected that he was neither, as he did not hold the title to the fee, and was not a *cestui que trust;* that, as the land was purchased, and the deed taken to Higgins by arrangement between him and Ogden, a resulting trust was not created, and notwithstanding Ogden paid the money on the agreement that Higgins should convey to him in a particular event the entire lot, and in another but three-fourths of it, still, as the contract was not evidenced by a written agreement, that it is within the statute of frauds, and was, therefore, void. It is certainly true, that a resulting trust can not be created by the agreement of the parties, but it always results from an inference or implication of law. And, from the facts in this case, it can not be contended that a resulting trust was created, as, if a trust was created, it was express and by agreement of the parties.

It is, however, equally clear, that an express trust was crea-
ted, whether such as the law prohibits from being enforced
or not, still it was a trust. All persons in the profession know
that, when a person purchases land to be held in trust for
another, by agreement, upon a valid consideration, a court
of equity will execute the trust and compel a conveyance,
although the agreement rested in parol, unless the defendant
expressly pleads the statute, and relies upon it as a defense.
And in this case, had Ogden completed the payment for the
lot, and filed his bill in equity against Higgins to have ·the
trust executed, the court would not have hesitated to enforce
the agreement to convey, if the statute had not been pleaded
as a bar. Prior to the statute of frauds, such contracts were
uniformly enforced, and are still, unless a plea of the statute
is interposed. He then held as a purchaser under a verbal
agreement, that could only be defeated by Higgins interposing
the statute as a defense.

Again, this statutory defense is personal, and can not be
interposed by strangers to the agreement. Like usury, infancy,
and a variety of other defences, it can only be relied upon by
parties or privies. Mere strangers have no right to plead or
insist upon it for the benefit of others. It in nowise concerns
them, and hence it must be left to the parties making it, or
those holding in privity with him, to make it or not, as they
may choose. It then follows, in this case, that appellee can
not be heard to insist that the contract between Ogden and
Higgins was not binding. It was for Higgins alone to deter-
mine whether he would execute the trust or avoid it under the
statute of frauds ; and the evidence shows that he regarded it
as binding, and in good faith executed the trust by conveying
it to appellants according to Ogden's request. Ogden, then,
held the verbal contract for the title, when he should pay the
money, and this constituted him a privy to the estate, and in
equity entitled to have it executed, unless Higgins had inter-
posed the bar of the statute. We have no hesitation in saying

that a purchaser of the fee, although his contract is unexe-
cuted, is in such privity to the estate as will enable him to
receive a release of the right of dower from the widow.

In such a case he is not a mere stranger, but has an interest
in the estate. In such a case he takes the release to attend
the estate, and not to hold or enforce it against the holder of ·
the fee; and in this case the right of dower became united
with the fee, as Ogden and Higgins both conveyed the premi-
ses to the company. Had Ogden failed to meet the payments,
and had the arrangement entered into between him and Hig-
gins never been executed, a different question might have
then been presented, but we deem it unnecessary to discuss it
in this case, as it does not arise on this record.

In the case of *Bailey* v. *West*, 41 Ill. 290, it was held that
an owner in equity held such a title as enabled him to take a
release of the right of ·the widow to dower; and in the case
of *Robbins* v. *Kinzie*, 45 Ill. 354, it was held that a grantor
of the fee, by a conveyance with covenants of warranty, was
such a privy as was capable of receiving such a release; and
in this latter case it was said that a tenant of the freehold, in
·fact or in law, was capable, without privity to the fee, to receive
such a release. And the authorities announce the rule, that
he who holds but a freehold estate may receive a release. In
Coke's Litt. sec. 447, it is said, that in some cases a release of
a right to a person who has neither a freehold in deed nor in
law, is good and valid; and, as an example, it is said a demand-
ant may release to the vouchee, and yet he has nothing in the
land. And the rule is too broadly stated in *Blain* v. *Harri-
son*, 11 Ill. 384, and *Summers* v. *Babb*, 13 Ill. 483, if it was
intended to hold that the right of. dower can only be released
to the owner of the fee. If it was intended to hold that it
might be released so as to unite with the fee, or those holding
under the same title and in privity with the fee, then it is
correct. A valid release of dower to either the tenant for life,
or to the remainder-man or reversioner, may undoubtedly be

made. And we have seen that it may be made to the equitable owner. So, it will be observed, it is not indispensable that the releasee should be invested with the fee.

In the enforcement of all common law rules, they must be held to have spirit as well as letter. They must have an application to all cases where the facts fall within the reason of the rule. Hence, courts never limit their application to but one state of facts, but apply them to all cases where it is demanded by the reason of the rule. Until dower is assigned, it is but a right of action, and it is contrary to the policy of the common law to permit such rights to be transferred or assigned so as to vest the right of action in another. And this is the reason why the right of dower, before it ripens into an estate by assignment, can not be aliened or assigned. But the reason of the rule ceases when it is released or transferred to the owner of the fee, or to a person in privity with the estate, so that he can not assert it against the owner of the fee. And this is accomplished when it is released to the owner of the fee, to the tenant of the freehold, to the equitable owner, to a purchaser from the owner of the fee, or to one who has warranted the title. In no one of these cases could the person to whom it is released assert it against the owner of the fee, but it thereby becomes merged and extinguished.

We have seen that Ogden was a purchaser, under an executed agreement, for the purpose of uniting it to the fee, and that it was subsequently united and extinguished; and it can not matter whether Ogden was, by the agreement, to receive the title to all or but three-fourths of the lot. He was nevertheless a purchaser, and had paid half of the purchase money on the lot. Nor could it matter that there was an arrangement that a company was to be formed for the purpose of improving the lot, or that others may have had an arrangement with Ogden by which they could pay a portion of the purchase money and have an interest in the lot, in proportion to the amount they might pay, as Ogden was a purchaser of

such an interest as would prevent him, after he received the release, from asserting the right against the others. He was the purchaser of such an interest as enabled him to take the release. One tenant in common may unquestionably receive a release from a dowress, and it will enure to the benefit of the estate and not alone to his individual interest.

It is urged that the evidence varies from the answer of appellants, and that they have, therefore, failed to make out a defense. It is true that it does, but not so far as to defeat the defense. All of the material allegations of the answer are proved. It can not matter that it is alleged that the company was formed, but not organized, when the conveyance was made by Jones to Higgins; or that Laflin furnished a portion of the money to make the first payment; or that others had the right to make payments towards the purchase and receive an interest in the title. It was alleged that Ogden was one of the purchasers, and we have seen that, being such, he had an interest in the title that gave him the right to receive the release. The important question was, whether he had such an interest as authorized him to receive the release, and the answer showed that he had. It perhaps showed that any or all of those with whom Ogden was acting could have received it. The claim of appellee does not appeal to the conscience of the chancellor for relief. She made efforts on two occasions to divest herself of her right of dower, and from the deeds it appears that on each occasion she and her husband received a satisfactory consideration for the relinquishment. Under such circumstances, nothing but the stern and inflexible rules of law should entitle her to recover.

For the reasons above indicated, the decree of the court below must be reversed and the cause remanded.

*Decree reversed.*