Mutual Mill Ins. Co. v. Gordon.

MUTUAL MILL INS. CO.

V.

CLARENCE GORDON, use, etc.

1. INSURANCE—EXPLAINING ANSWER IN APPLICATION.—In an action on an insurance policy upon the question of over-estimation of the property, the applicant was permitted to state that his answer in the application, that the property was worth $25,000, had reference to the mill as a whole. *Held*, that under the circumstances of this case such evidence was admissible.

2. INSURANCE—STATEMENT AS TO INCUMBRANCE.—A, B and C, tenants in common, mortgaged their mill and other real estate for $37,000, and subsequently partitioned the property. The mill was deeded to A, and it was verbally agreed between the parties that the mill property should be held for $17,000 of the mortgage, and the residue divided between the tracts taken by B and C. After the partition the parties occupied their respective portions in severalty. This arrangement as to the mortgage was satisfactory to mortgagors and mortgagees. A, in his application for insurance on such mill, stated there was $17,000 incumbrance on the property. Upon a loss occurring, the insurance company insist that this statement as to incumbrance, whether mistakenly or intentionally made, avoids the policy. *Held*, that the arrangement made between the parties to the mortgage after the partition, can be sustained as valid when assailed by the insurance company; that assured's answers were therefore true and did not avoid the policy.

3. STATUTE OF FRAUDS.—The plea of the Statute of Frauds is personal to the one making the promise and a stranger to the contract can not be heard to say that the contract was not binding.

· 4. RELEASE OF MORTGAGE DEBT.—The mortgagee may deal with the mortgage debt in the same manner as though it were unsecured. A formal release of the mortgage of record may be required to be under seal, but a release or discharge of the debt may be verbal or in writing. When the debt is released, the mortgage falls.

5. CONTRACT—CONSIDERATION.—The agreement between the tenants in common to accept a portion of the entire estate in severalty and to pay an equitable proportion of the incumbrance, is a sufficient consideration of the promise of the mortgagee to apportion his mortgage debt among the tenants in severalty.

APPEAL from the Circuit Court of Randolph county ; the Hon. GEORGE W. WALL, Judge, presiding. Opinion filed November 24, 1886.

Action upon an insurance policy issued October 4, 1884, to one James Gordon, upon machinery, etc., in his mill at Sparta, in this State, and by him assigned with consent of the appellant to appellee, who purchased the mill property before the loss. The defense was made that the insured, James Gordon, overvalued the property, and also misrepresented in his application the amount of incumbrances upon the property. The defendant introduced in evidence the application, from which it appeared that certain questions were asked of and answers made by said Gordon which are set out in the opinion of the court. The loss, if any, was made payable to Borders & Boyle,

as their interest might appear.   The defendant then read in
evidence the mortgage referred to in the answer of Gordon,
from which it appears that said Gordon and Robert H. Rose-
borough and Daniel P. Barker, on the 25th day of January,
1884, mortgaged said mill, with a large amount of other real
estate, to said Borders & Boyle, to secure one certain promis-
sory note for $37,000, payable to their order in five years from
date, with interest at six per cent., payable annually.   Testi-
mony was also introduced that no part of the note had been
paid.   In rebuttal the appellee offered evidence over the
objection of appellant, showing that after the mortgage
was given and before the policy was issued, the said Gordon,
Roseborough and Barker, who were tenants in common of
all the property described in the mortgage, made a parti-
tion of it, executing deeds to each other, and that the real
estate upon which the mill in question was situated was deeded
to said James Gordon in severalty, the other two taking other
portions in like manner ; that at the time the partition was
agreed upon the mortgagees verbally agreed that their mort-
gage debt should be apportioned among the different tracts
and parcels, and that the mill property in question should be
held for the payment of but $17,000 of the mortgage debt,
the residue being divided between the tracts taken by Rose-
borough and Barker ; that this arrangement was a part of the
proceedings resulting in the partition.   The parties, after the
partition, occupied their respective portions in severalty, each
claiming in fee subject to the amount of the mortgage debt
apportioned to it as above stated.   It was also shown that a
few days before the trial Borders & Boyle, by an agent, had
executed a writing evidencing the agreement as above, which,
however, was excluded by the court upon objection, leaving
the case upon this point depending upon the oral agreement.
Evidence was also introduced tending to show that Borders
& Boyle have always been and still are satisfied with their
agreement apportioning the mortgage debt, and are willing to
fulfill it.   The appellant saved exceptions to the ruling of the
court allowing the evidence to go to the jury.   Upon the
question of over-valuation of the property, the applicant,

James Gordon, was allowed to state that his answer that the property was worth $25,000 had reference to the mill as a whole. Evidence was also introduced tending to show that the mill when insured was of that value, and that the machinery insured was worth exceeding $16,000. The jury returned a verdict for the plaintiff, and the defendant appealed.

Messrs. TAYLOR & POLLARD, for appellant; as to affirmative warranties in an insurance policy, cited Thomas v. Fame Ins. Co., 108 Ill. 100; Atlantic Ins. Co. v. Wright, 22 Ill. 474; Ins. Co. v. Fish, 71 Ill. 620; Barteau v. Ins. Co., 67 N. Y. 595; Witherell v. Ins. Co., 49 Me. 200; Wall v. Howard Ins. Co., 14 Barb. 385; Columbia Ins. Co. v. Cooper, 50 Pa. St. 339; Glendale Woolen Co. v. Ins. Co., 21 Conn. 19; Sheldon v. Ins. Co., 22 Conn. 235; Davenport v. N. E. Mut. F. Ins. Co., 6 Cush. 340; Hayward v. Ins. Co., 10 Cush. 444; Packard v. Ins. Co., 2 Gray, 334; Ins. Co. v. Winslow, 3 Gray, 431; Ins. Co. v. Winslow, 8 Gray, 38; Towne v. Ins. Co., 7 Allen, 51; Jacobs v. Ins. Co., 7 Allen, 132; Campbell v. Ins. Co., 98 Mass. 402; Hutchins v. Mut. Ins. Co., 11 Ohio St. 480; Byers v. Ins. Co., 35 Ohio St. 614.

An agreement to abandon a valid claim, unless there be a consideration shown, is a mere *nudum pactum:* Wilson v. Keller, 9 Bradwell, 347; McLean v. McBean, 74 Ill. 135; Renamaker v. Cordway, 54 Ill. 303.

The application and policy must be taken as embodying the contract of the parties, and the terms can not be changed by parol proof: Ins. Co. v. Fish, 71 Ill. 620; Schmidt v. Ins. Co., 41 Ill. 296; Higginson v. Dall, 13 Mass. 96; Alston v. Ins. Co., 4 Hill, 329.

Messrs. KOERNER & HORNER, for appellee; that the parties to the mortgage were bound by the agreement, cited Shepley v. Raugly, 1 W. & M. 217; Pickard v. Sears, 6 Ad. & Ell. 474; Chapman v. Hamilton, 19 Ala. 121; Riley v. Quigley, 50 Ill. 304.

A paid mortgage, though not released of record, is not an incumbrance; neither is a fraudulent mortgage or one invalid

for any reason whatever, an incumbrance : Merrill v. Agricultural Ins. Co., 73 N. Y. 457; Hawk v. Dodge Co. Ins. Co., 11 Wis. 191 ; May on Insurance, 2d Ed., 192 ; Lycoming Ins. Co. v. Jackson, 83 Ill. 403.

PILLSBURY, J.   Upon the oral argument of this cause one reason suggested for reversing the judgment was that the declaration was fatally defective in failing to aver that the property was destroyed by fire; but counsel for appellee claiming that this defect was a clerical error in the copyist, the counsel for appellee consented that an amendment might be filed with the declaration, curing the omission in this particular, and that the same should be considered a part of the record. This was done, and the cause submitted to us to be determined upon the merits.   The errors assigned which were relied upon in argument, question the action of the court below in allowing parol testimony to be introduced to the jury, explanatory of the answers of James Gordon, in the application, as to the value of the property insured and the amount of the incumbrance thereon, and in instructing the jury in conformity to such ruling of the court that such evidence was proper for their consideration.   Upon the question of the value of the property insured by this policy there was evidence that new machinery, etc., of the kind and quality in the mill, would cost to exceed $21,000, and that insured had, by use, depreciated it about 25 per cent., leaving its value when insured over $16,000, and that other insurance upon it amounted to $10,900, making a total insurance of $13,900; and that the appraised value of loss by fire was $7,430.50, which was apportioned among the several companies according to the amounts covered by their respective policies.   The amount of the recovery against the appellant was for its proportion of the loss thus adjusted, and no objection is made to the amount if any liability upon the policy is shown; but it is insisted, first, that the policy was avoided because of the statement in the application that the property was worth $25,000, and that allowing Gordon to state that he supposed that the question referred to the value of the mill complete, was error.   The application and policy were

filled out upon blanks of the insurance company, and an examination of them discloses the fact that they were designed for use where a mill was to be insured, section 8 of the conditions attached to the policy going so far as to describe the property insured in this case as the buildings, and allowing repairs and improvements to the premises ; and by the first clause of the application relating to any property the mill is described as a whole, and then by the third clause the amount insured is placed upon the " mill machinery, shafting, gearing, belting, tools, etc., while in said building. The specific questions asked of the insured, and his answers, so far as necessary to notice, are as follows : " Are you the sole owners of the property to be insured (exclusive of the land)? Yes. Age of building? Twenty-seven years. Is it occupied by owners? Yes. *What is the present cash value of the property to be insured exclusive of land and property not specified? Twenty-five thousand dollars. Is there any incumbrance ? Yes. What is the amount and character of incumbrance, to whom payable, and when ? $17,000. Mortgage to Borders & Boyle, five years from February, 1884. What part of principal or interest is past due and unpaid ? None. Do you own land in fee simple ? Yes. If land is leased when does lease expire ?* Does it contain privilege of renewal? Is there any litigation present or threatened affecting the title to any part of the property? No." The property covered by this policy was a part of the mill, a part of the real estate, and the underwriter, desiring to be advised of all the circumstances surrounding the risk, directed the attention of the appellant to the condition of the entire property upon which the risk depended. If the mill burned it would necessarily injure the machinery therein, and the danger of the risk about to be assumed was dependent upon its condition as much as though the building was itself the subject of the insurance, and their inquiries therefore are directed to the condition of the property as to its entirety, the title to the real estate, how held and by whom occupied, the age of the building, the value of the land. Then follows the inquiry as to the value of the property to be insured exclusive of land and property not

specified. Not specified where? Not in the policy, for it had not been issued. It must be, then, in the application; and requesting a statement of the value of the property, exclusive of the land and property not specified, would lead any applicant to suppose the question was intended to include the building of which the insured property was a part and parcel. The land was excluded by the interrogatory, showing a knowledge upon the part of the underwriter that the applicant would state its value if not excepted. Under such circumstances we are of the opinion that the applicant was justified in giving the value of the mill complete in answer to such question. Having led him by the questions propounded reasonably to suppose that the insured desired the value of the mill as an entirety to be stated, it ought not now to be permitted to take a technical advantage of a misunderstanding of the true import of the question into which he was led by the course pursued in obtaining the information desired, especially when it is apparent that no injury has resulted to the company. Wells v. Carpenter, 65 Ill. 447. All the insurance on the property was less than its value, and the damage sustained to it by the fire far less than the insurance upon it, and in such case it is hard to understand how the statement as to value becomes very material in the absence of any proof whatever that the over-estimate was fraudulently made or had anything to do with the cause of the loss. The evidence introduced, that the applicant gave the value of the mill complete, had a tendency to show his good faith in making the answer and to negative the averment in the plea of the defendant that it was falsely and fraudulently made, and no error was committed by the court in allowing it. It is next insisted, and this seems to be the main point relied upon, that the statement of the applicant that there was but $17,000 incumbrance was untrue, and the policy therefore never took effect, and that such answer was shown to be untrue by the production of the mortgage to Borders & Boyle for $37,000, followed by proof that it was unpaid. Counsel contend that this statement, under the terms of the application and policy, became a part of the contract and a warranty of its correctness by the insured, which avoids the policy, if untrue,

whether mistakenly or intentionally made. This we may concede to be the law without referring to the authorities cited in support of the proposition; but if the arrangement between the tenants in common and the mortgagees, made upon the partition of the lands, can be sustained as valid, when assailed by the appellant, it can not be contended that the answers of the assured were untrue. The defense, then, depends upon the validity of this agreement to apportion the incumbrance between the tenants in severalty, and two objections are made by the appellant to the validity of such agreement: 1st, that it was in parol, and 2d, that it was without consideration. As to the first objection, we are of the opinion that the appellant is not in the position to avail itself of the plea of the Statute of Frauds, as that plea is personal to the one making the promise (Mitchell v. King, 77 Ill. 462), and a stranger to the contract can not be heard to say that the contract was not binding. Chicago Dock Co. v. Kinzie, 49 Ill. 289. Even if the contract related to an interest in the land and was by parol, unless the statute be relied upon by plea, it will be as valid as though in writing. Dock Co. v. Kinzie, *supra.* If Borders & Boyle made the contract and desire to fulfill it, upon what principle of law can the appellant urge that they shall not do so? The mortgage debt is the principal thing, and the mortgage but a mere incident of it. Coffing v. Taylor, 16 Ill. 457. The mortgagee may deal with the debt in the same manner as though it were unsecured. A formal release of the mortgage of record may be required to be under seal, but a release or discharge of the debt may be verbal or in writing, as in other business transactions, and where this is done the mortgage falls with the debt and is no longer a lien, although not technically released of record. The vitality of the mortgage lien depends upon an existing indebtedness, and is an incumbrance upon the premises only to the extent of the subsisting indebtedness. Again, it is said that there was no consideration for the promise of the mortgagees to look to this land for $17,000 only, and to other tracts for the remainder. It is conceded that the partition is valid between the tenants in common, and they are bound by its terms whether the mortgagees can retain their entire debt against every parcel or not. Each tenant in common takes

Mutual Mill Ins. Co. v. Gordon.

and must hold his interest after the partition in severalty, and if the mortgagees see proper to agree to equitably apportion their mortgage as a part of the agreement for partition, it would seem to be unjust to one of them to compel him to discharge the entire debt or lose the land assigned to him. It is clear it would be a detriment to him and might result very disastrously to his estate in the land. Equity never compels a party to act illegally, or to do what he ought not to do, yet if this partition had been made by judicial proceeding it would have been the duty of the court to ascertain the amount of the incumbrance and apportion it according to the rights and interest of the parties. Kingsbury v. Buckner, 70 Ill. 514. The partition of the lands and the apportionment of the mortgage debt among the various parcels set off in severalty, were and still are entirely satisfactory to the parties interested, and we must assume that they would have been content if the same result had been provided by a decree. And if the court of equity would have compelled such partition and apportionment of the mortgage, why may not all the parties to be affected, mutually agree to the same result without resorting to the courts? We have no doubt that the agreement between the tenants in common to accept a portion of the entire estate in severalty, and to pay an equitable proportion of the incumbrance, is a sufficient consideration for the promise by the mortgagee thus to apportion his mortgage debt among the tenants in severalty. From the evidence introduced we fail to find any untruthfulness in the answer regarding the incumbrances, or that it was made in bad faith or has worked any injury to the underwriter. What we have said disposes of the objections taken to the ruling of the court in giving and refusing instructions, except as to the second of plaintiffs, which it is claimed submits the construction of the policy to the jury. This instruction may not be as clearly expressed as it should be, but taken in connection with the first it could not have misled the jury, and in our view of the evidence, even if erroneous, the appellant has not been injured. Considering the whole record, we find no such error as would justify us in reversing the judgment, and it will therefore be affirmed.

Judgment affirmed.