W. FRANK GODWIN, Appellee, *vs.* TITUS T. SPRINGER *et al.* Appellants.

*Opinion filed February 20, 1908—Rehearing denied April 9, 1908.*

1. SPECIFIC PERFORMANCE—*specific performance need not be decreed if injustice will result.* While specific performance cannot be refused from mere whim or caprice, yet if there is in a particular case some substantial element to make it appear to the chancellor that it will be unjust to grant the relief sought it may be denied.

2. SAME—*when specific performance should be refused.* Specific performance of an agreement to exchange properties should be refused where it appears that a certain contract which the complainant agreed to execute as part of the consideration, and which was intended to secure a right of value to the defendant, is so drawn as to leave it in the power of the complainant to nullify the purpose for which it was intended, and where the evidence is conflicting as to whether the defendant agreed to accept the contract in such form.

APPEAL from the Circuit Court of Macon county; the Hon. W. C. JOHNS, Judge, presiding.

On May 3, 1906, W. Frank Godwin, appellee, filed his bill in the circuit court of Macon county against Titus T. Springer, Nancy J. Springer, the Decatur Brick Company, (a corporation,) appellants, and Josiah M. Clokey, for specific performance of a parol contract and for other relief.

The bill alleged that on January 18, 1906, appellee entered into a parol agreement with Titus T. Springer to convey to him sixteen lots, valued at $4000, owned by him in Wabash place, in or near the city of Decatur, Illinois, subject to a certain coal lease, and to execute a certain option or instrument in writing wherein he would agree to tender to the city of Decatur, for park purposes, the land to be conveyed to him by Springer, and to execute a note to Springer for $800, payable March 10, 1906, with interest thereon at six percentum per annum after maturity, in exchange for a tract of land containing 36½ acres owned by Springer in Macon county, Illinois, of the value of $7000, subject to a mortgage indebtedness of $2200, which Godwin was to assume; that in pursuance of said agreement deeds conveying said lots and said tract of land and said note and option contract were executed by said parties and delivered to Josiah M. Clokey, to be held by him in escrow for said parties until the abstracts of title to said lots and tract of land should be examined and the title found to be merchantable; alleged that Godwin has a good fee simple title to his said lots, and that since said contract was entered into, on January 20, 1906, Springer delivered to Godwin a lease for said 36½ acres which had been executed by Springer to one J. E. Fain, a tenant in possession of said premises, and requested Godwin to carry out the terms and provisions of said lease, and afterwards notified Fain that the land had been conveyed to Godwin and that he should recognize and consider the latter as his landlord; that Fain thereupon attorned to Godwin; that Godwin has fully performed his part of said contract with Springer and is ready and willing to pay to him the said $800, with interest thereon, as pro-

vided by said note; alleged that Springer has put it out of his power to convey to Godwin the said 36½ acres by conveying the same to the Decatur Brick Company, and that at the time of said conveyance Godwin was in possession of said property through his tenant, Fain, and is now so in possession of the same, and that said company had notice of the rights and claims of Godwin therein; that since January 18, 1906, up to the time of the filing of the bill, the said deeds from Godwin and Springer to each other, the said note and option contract have been in the possession and control of said Clokey in escrow, for the benefit of said parties, and that the abstract of title to said lots has been in the possession and control of Springer. The bill prayed that the deed from Springer to the Decatur Brick Company be canceled and set aside and that Clokey be required to deliver said deeds in his hands to the grantees named therein, upon the payment by Godwin of the said note and interest due thereon, and for general relief.

Clokey defaulted, and the appellants, on May 25, 1906, filed their answer, which, as later amended, denied that by said parol agreement any reservation in reference to said coal lease was to be made in the conveyance of said lots by Godwin; averred that he had failed and refused and was unable to carry out his part of said agreement with Springer; admitted that Springer had conveyed the said 36½ acres to the Decatur Brick Company, and denied that at the time of said conveyance Godwin was in possession of said premises through his tenant or that the said company had notice of the pretended rights of Godwin therein; averred that Springer delivered the said lease to said 36½ acres to Godwin, to be delivered by him to Clokey, and denied that he notified Fain that the land had been conveyed to Godwin and that he should recognize him as his landlord; averred that Godwin had a complete and adequate remedy at law and denied that he was entitled to any part of the relief prayed for in his bill.

Later a supplemental bill was filed by appellee, praying for injunction and for an accounting with J. E. Fain and Linzy B. Fain, and an answer was filed thereto. Replications were filed, and the cause was referred to a master in chancery to take proofs and report his findings and conclusions. The master found, in substance, that the contract entered into by Godwin and Springer was as set out in the bill; that Godwin and Springer each executed warranty deeds in accordance with the contract, and that said deeds were delivered to Josiah M. Clokey to be held in escrow until the abstracts of title were examined, and that Godwin notified Clokey that he would accept the title to the lands of Springer on or about January 29, 1906; that the Decatur Brick Company purchased of Springer the said 36½ acres without notice of the existing parol contract between Godwin and Springer, and that as the assignment of said lease from Springer to Fain was not made to Godwin in writing it was not binding, and that appellee was not entitled to the relief prayed.

Objections to the master's report made by both parties were overruled and re-filed as exceptions. On August 21, 1907, the court entered a decree overruling all of the exceptions filed by appellants, sustaining certain of those of appellee, and finding, in substance, that Godwin was the owner of said sixteen lots, subject to a certain coal lease, and that Springer owned the tract of land; that it was agreed by the parties that warranty deeds conveying said lots and tract of land should be executed and placed in the hands of Josiah M. Clokey in escrow, to be delivered after the abstracts of title to said lands had been examined and the titles found to be good, merchantable titles; that the terms of said sale, if not completely understood before January 18, 1906, were agreed upon by Godwin and Springer at an interview in the office of said Clokey on January 23 or 24, 1906, when the option contract with reference to Godwin offering the land to the city for park purposes was

interlined and left with Clokey in escrow with the deeds of the respective parties; that the conveyance from Springer was to be subject to the rights of J. E. Fain, a tenant of Springer, who was then in possession of his land; that said deeds dated January 18, 1906, were executed by said parties and placed in the hands of said Clokey in escrow, and that Godwin on the same day executed the said note for $800 and delivered it to Clokey in escrow; that in pursuance of said parol contract Godwin executed a certain option in writing, agreeing to tender to the city of Decatur, for park purposes, the land to be conveyed to him by Springer.

The decree further found that on January 19, 1906, Springer delivered to Godwin the lease held by Fain, and on January 20, 1906, verbally notified Fain that he had conveyed to Godwin and that he should look to him for the performance of said lease; that on January 21, 1906, Godwin agreed with Fain to carry out the terms of said lease and Fain recognized Godwin as his landlord and attorned to him; that Godwin caused the abstract of title to the Springer land to be examined and notified Clokey that the title was satisfactory and that he was willing to accept the deed from Springer and willing that his deed to Springer be turned over to him; that on February 1, 1906, Springer conveyed the premises mentioned in his deed to Godwin to the Decatur Brick Company, and that at the time of said conveyance Godwin was in possession of the said premises through his tenant, and on account of such possession the said company had notice of the rights and claims of Godwin; that said company was not a *bona fide* purchaser without notice and that the deed from Springer to said company was subject to the rights of Godwin; that Godwin is now, and at all times since the delivery of said deeds in escrow and the abstracts of title has been, ready, willing and able to accept title to the premises mentioned in the deed from Springer, and that the title of said Godwin to the premises to be conveyed by him is a good fee simple title subject to

the coal lease, in accordance with a contract finally entered into between the parties; that Godwin is entitled to the relief prayed for and to a decree for specific performance against Springer, and such relief was accordingly decreed.

It appears from the evidence that some time prior to January 18, 1906, negotiations were entered into by Godwin and Springer concerning the exchange of the properties here in dispute, and that an agreement as to the terms of the trade, as the parties believed, was reached on or before that date, which was the date upon which the deeds were executed. The deed from Godwin was made subject to a coal lease on the lots thereby conveyed. At the time of the execution of the deed Godwin also signed a note for $800, payable to the order of Springer on March 10, 1906, and a certain contract wherein he agreed to give the city of Decatur an option on the land to be conveyed to him by Springer, for park purposes. The deeds, note and the option contract, executed in duplicate, were placed in the hands of Josiah M. Clokey in escrow, to be delivered to Godwin and Springer when they had examined the titles and found them satisfactory. Clokey was an attorney at law who was engaged in the real estate business. Godwin was a real estate agent and officed with Clokey. They advertised as partners in the real estate business, although it appears that they were not actually in partnership. Up to this time the question of the reservation of the coal by Godwin had not been discussed between the parties. During the following week, and on January 23 or 24, 1906, Springer went to Clokey and Godwin's office and examined the deed and option contract executed by Godwin, and at that time objected to the reservation being made in the deed and stated that the option contract was not as he wanted it, and insisted that Godwin should place a limitation upon his right to sell clay from the land Springer was conveying to him. Whether the differences between the parties to the contract were then adjusted is the principal controverted question in

the case. At any rate, Springer went away leaving all the instruments in Clokey's hands.

The property owned by Springer was occupied by J. E. Fain, a tenant, under a written lease from Springer, and a day or two after the deeds were executed Springer handed this lease to Godwin, telling him, as he says, to hand the lease to Clokey, to be kept by him with the other papers. This lease was retained by Godwin under claim of right. On the 20th or 21st of January, 1906, Springer notified Fain, according to the testimony of the latter, that he had sold the farm and that Godwin would comply with his (Springer's) obligations in the lease enumerated. Later, and before the controversy in the office of Clokey and Godwin, which occurred on January 23 or 24, 1906, Godwin and Fain had a conversation in which Godwin told him that he had bought the farm; that he had a deed for it and would carry out the terms of the lease the same as Springer, and appellee contends that Fain then attorned to him. A few days later Springer went to the office of Buckingham & Gray, a firm of attorneys, and had Mr. Gray prepare for him a contract to be signed by Springer and Godwin, which provided, among other things, that Godwin and his wife should bind themselves to make to the city of Decatur, on or before January 1, 1907, a written offer or proposition to sell and convey to said city, for park purposes, the lands described in the deed from Springer, for the consideration of $7000, said sum to be paid in ten years from the date of the acceptance of the proposition, with interest at five per cent per annum, giving said city the option of accepting said offer at any time within three years after it was made. This agreement was then taken by Gray and Springer to Godwin's office to be submitted to him, but as Godwin had left the city on a trip to Minnesota, this contract, which, as Springer testified, embodied the option contract actually agreed upon between them, was never presented to Godwin for his signature. On February 1, 1906, before Godwin's

return, Springer conveyed the land by a warranty deed to the brick company. Before Godwin left the city he had stated to Clokey that he was satisfied with Springer's title and that he was ready to complete the deal. Springer denies that he said to Fain that he had sold the land, but says he told him that he was on a trade with Godwin and if it went through Godwin would be his landlord. Whatever was said between Springer and Fain and between Godwin and Fain in reference to the latter becoming the tenant of Godwin was said after the time when the deeds were executed and before the time of the controversy which arose in the office of Clokey and Godwin, on January 23 or 24, 1906. Since the deed was made to the brick company both that company and Godwin have claimed to be Fain's landlord and he has refused to pay rent to either.

From the decree of the circuit court Titus T. Springer, Nancy J. Springer and the Decatur Brick Company have appealed to this court, and it is contended by them that the court erred in entering the decree in favor of Godwin.

BUCKINGHAM & GRAY, for appellants.

HUGH CREA, and HUGH W. HOUSUM, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The Statute of Frauds is not interposed as a defense, so far as the original contract is concerned.

By the agreement of the parties Godwin was to exchange certain lots which he owned in Wabash place, in or near the city of Decatur, at a value of $4000, for a tract of land owned by Springer, lying just east of the city of Decatur, at a price of $7000. The land was encumbered by mortgages securing $2200, which Godwin was to assume, and he was to give his note to Springer for the balance of $800. Godwin was to enter into a contract by which he was to bind himself to give to the city of Decatur an option to purchase the land which he was acquiring from Springer

and was to take that land subject to a lease to Fain. So far there is no question as to the terms of the contract. After the parties had, as they believed, closed the negotiations and arrived at a mutual understanding, Mr. Clokey, an attorney and Godwin's office companion, was directed to prepare the necessary papers. After the instruments which he deemed necessary had been executed, and while they were in his possession, he notified Springer to that effect. The latter came to the office of Clokey and Godwin and there had an interview with them. It then developed that the papers prepared were unsatisfactory to Springer in three respects: First, the deed conveying the lots to him reserved the underlying coal; second, no provision was made by which Godwin was bound not to sell any clay off the land that was to be conveyed to him until such time as it should become evident that the tract could not be sold to the city of Decatur; and third, the instrument which had been prepared and signed by Godwin for the purpose of binding him to give to the city of Decatur an option on the real estate which he was to acquire, was not deemed by Springer to be in accordance with the verbal understanding between the parties.

This tract of land owned by Springer, lying east of the city of Decatur, was so situated that both Springer and Godwin desired that the city buy it for park purposes. Each of them owned considerable real estate in that neighborhood, and they believed that if the city would buy this land and establish a park there, that the other lands owned by them in that vicinity would be very materially enhanced in value. It is evident that the parties understood that the city of Decatur either could not or would not buy this property and pay for it in the near future; that if it was to be sold to the city it must be by a contract providing for the payment of at least the principal part of the purchase money at some period several years in the future. In the negotiations the advisability of offering the property to the city

and giving it ten years' time in which to pay for the same was discussed between Godwin and Springer. Godwin urged Springer to make such a proposition to the city, but Springer stated that the condition of his business was such that he did not want to have the purchase price of the land tied up for a term of years, and insisted that if the exchange of properties was made Godwin should bind himself to give the city an option to purchase the property. Godwin finally assented to this, but the parties afterwards disagreed, as was developed by the interview above referred to at the office of Clokey and Godwin, in reference to the terms of the option. Springer states that the option to the city was to give three years within which to purchase the property at $7000 and ten years' time in which to make payment, with interest on the purchase price at five percentum per annum, while Godwin contends that he did not bind himself to offer the property to the city at any particular price, but only to give the city an option to buy it at some price that he might thereafter fix.

When Springer arrived at the office of Clokey and Godwin, on the occasion above mentioned, he was shown, among other instruments, a paper in duplicate, signed by Godwin, which was drawn for the purpose of binding Godwin to give the city an option for the purchase of the property. To that instrument Springer made two objections: (1) It did not provide at what price the property should be offered to the city, and (2) it did not state what period the city should have within which to accept the proposition so to be made by Godwin. Thereupon, with Godwin's consent, this instrument was altered by the interlineation therein of certain words, and as so altered it reads as follows:

"Whereas, Titus T. Springer and Nancy J. Springer, his wife, have this day conveyed to the undersigned certain lands in the south-west quarter of section eighteen (18), township sixteen (16), north, range three (3), east of the third principal meridian, lying north and east of the right of way of what was formerly known as the Indiana and Illinois Central Railroad Company, situated in

the county of Macon and State of Illinois, in part consideration of the assurance on my part that I would tender said lands to the city of Decatur for park purposes; now, therefore, in fulfillment of said assurance, the undersigned covenants and agrees, at an early day during the present year, to make a written tender of said lands to said city for such park purposes, granting to said city the privilege of paying for said lands at any time within ten years from the date of said tender, with interest at the rate of five per cent per annum from date of acceptance of tender and contract made, payable annually or semi-annually, as preferred by said city, *said city to have three years from tender in which to accept,* and on receipt of the purchase price to convey said premises to said city by a good and sufficient warranty deed, my wife joining me therein, with release of homestead and dower.

"Executed in duplicate this 18th day of January, A. D. 1906.

W. FRANK GODWIN (Seal)."

The words italicized are the words that were interlined after Springer had made his objections.

It will be observed that the undertaking, both before and after the alteration, did not specify the price at which Godwin was to offer the property to the city. Clokey and Godwin testified that the questions in reference to the clay and coal were at that time settled by Springer waiving his claims in reference thereto; that the instrument above set out as it there appears was acceptable to Springer; that both the parties to the transaction expressed themselves as being satisfied with the various instruments, and that they were left with Clokey with the understanding that the abstracts should be passed upon, and if found to show merchantable titles that Clokey should then deliver the deeds and the contract. Springer testified that neither of the three matters in dispute was adjusted, and that he insisted that the instrument above set out was not only not in compliance with the agreement made by him with Godwin, but that it was entirely worthless, for the reason that it fixed no price at which the property should be offered to the city but left Godwin free to fix a price which would absolutely prohibit the city from purchasing. Springer went away and left all the papers that had been executed in Clokey's

possession. The next day he sent for and obtained a copy of the agreement pertaining to the option. A day or two thereafter he called at that office again. If Clokey and Godwin are to be believed, he again made objections and again withdrew them. If he is to be given credence, he withdrew nothing. A few days later he attempted to see Godwin again in reference to the matter but failed to do so as the latter was then out of the State, and thereupon he sold and conveyed his property to the Decatur Brick Company for cash.

It is entirely clear from this record that by the original arrangement a part of the consideration which Springer was to receive was a binding contract executed by Godwin, by which the latter was to be obligated to offer the property in question at some fixed price to the city of Decatur for park purposes. It is also apparent that the agreement on this subject signed by Godwin, which is above set out, did not bind him to make any offer to give to the city any option which would be any consideration whatever for the conveyance of real estate to him by Springer, for the simple reason that under that agreement he could fix the price at one million dollars, or a greater sum, when he offered the property to the city, and Springer's purpose in requiring that the city be given an option would in that manner be entirely defeated. We think it extremely doubtful whether Springer agreed to accept that contract in the form in which it was written and offered to him. This document pertaining to the option, both as originally written and as altered, was mere waste paper. It was absolutely without value. It would be so understood by any man of ordinary business capacity, and Springer does not seem to be deficient in that respect. To offer that document to Springer was to offer him nothing, when it is entirely apparent from this record that he expected to receive something of value. Godwin's obligation, so far as any substantial thing is concerned, would have been no less had he refused to sign any

agreement whatever pertaining to the option. His attempt to force Springer to accept this worthless piece of paper does not commend itself to our sense of right. If Springer did not agree to accept the contract in the form in which it was written, it follows, as a matter of course, that specific performance should not have been decreed. If, on the other hand, he agreed to accept the contract in that condition, the question whether a court of equity, in the exercise of its discretion, should award specific performance arises.

"It is the settled doctrine in this State that a party can not, as a matter of right, have a contract specifically enforced in equity, but that the exercise of this power rests in the sound discretion of the court, in view of the terms of the contract and the surrounding circumstances." *East St. Louis Railway Co.* v. *City of East St. Louis,* 182 Ill. 433, and cases there cited.

It is true, as stated in *Chicago, Burlington and Quincy Railroad Co.* v. *Reno,* 113 Ill. 39, that no positive rule can be laid down governing the exercise of the discretion of a court of equity in such cases. Each controversy of this character must be determined upon its own facts. Specific performance may not be refused from mere whim or caprice, but where there is in the case some substantial element which moves the conscience of the chancellor and makes it appear to him to be unjust to decree the relief sought it may be denied. Godwin, so far as appears from this record, has expended no money on account of this transaction, except such trifling sum as he may have paid Clokey for preparing papers and examining Springer's abstract, and such amount as he may have paid for the use of a horse which he furnished to Fain for a short time, after this suit was commenced, in accordance with the terms of Fain's lease. He has made no improvements on the Springer land and has never been in possession thereof unless Fain became his tenant, and then only by virtue of the fact that the tenant was in the actual occupancy of the premises. On the

other hand, if the court requires Springer to specifically perform and accept the option contract which has been tendered him, he will be forced to take, as a part of the consideration for his conveyance, that which cannot profit him, when in the first instance, at least, something of value was intended. The chancellor, in the exercise of his discretion, according to our view, should have refused the relief sought.

Mr. Gray, who both in the circuit court and in this court acted as one of the solicitors for appellants and who took an active part in the trial of the case in both courts, testified in the circuit court on behalf of his clients. His testimony, while material upon one phase of the case, does not relate to the question upon which the decision of the case turns. Under these circumstances we deem it unnecessary to say anything in regard to the course which he pursued.

The decree of the circuit court will be reversed and the cause will be remanded, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*