(No. 13316.—Decree affirmed.)

JAMES H. ANDREWS, Appellant, *vs.* OTTO A. MOHREN-
STECHER, Appellee.

*Opinion filed October 23, 1920—Rehearing denied Dec. 9, 1920.*

1. CONTRACTS—*assignee of contract for purchase of property takes only the rights of the assignor.* An assignee of a contract for the purchase of land does not occupy the position of an innocent purchaser but in the absence of estoppel or other special circumstances takes only the rights of his assignor and subject to any defenses that might be made against his assignor.

2. SPECIFIC PERFORMANCE—*specific performance will not be decreed in doubtful case.* If the language of a contract for a conveyance is such as to leave the intention of the parties in doubt or is otherwise uncertain a court of equity will not decree specific performance.

3. SAME—*right to specific performance depends upon circumstances of case.* The right to specific performance depends upon the circumstances of each case, and relief will be denied where it appears that to enforce the terms of a contract will be inequitable.

APPEAL from the Circuit Court of Adams county; the Hon. ALBERT AKERS, Judge, presiding.

GOVERT & LANCASTER, for appellant.

JOHN E. WALL, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant, James H. Andrews, filed a bill in chancery in the circuit court of Adams county against appellee, Otto A. Mohrenstecher, praying for the specific performance of

a contract or option for the purchase of certain premises demised by appellee for a period of ninety-nine years, with the privilege to the lessee of purchasing the same at any time during the lease for the sum of $17,000. Appellee answered the bill and filed a cross-bill asking for the reformation of the contract and for its specific performance as reformed. Appellant filed a demurrer to the cross-bill, which the court sustained, and appellee elected to stand by his cross-bill. Replication was filed to the answer to the bill, and the cause was referred to the master in chancery upon the issues raised by the bill, answer and replication. The master found the equities in favor of appellee and recommended a decree dismissing the bill for want of equity. The master overruled objections filed to his report and exceptions were preserved. The court overruled the exceptions and entered a decree in conformity with the master's findings and conclusion and dismissed the bill for want of equity.

The facts are, in substance, as follows: In 1914 appellee was contemplating the construction of an office building, to be known as the Majestic building, on the south part of his lot 6 of Wheelock's addition to the city of Quincy. John Spanople and his brother, Louis Spanople, proposed to construct on the north half of said lot a theatre building, to be called the Majestic Theatre. The only access to the theatre from Main street, on the south side of said lot, when both proposed buildings should be constructed, would be by some sort of passageway through the office building. On January 22, 1914, appellee and the Spanople brothers entered into a contract by which they agreed that appellee would sell and convey to the Spanoples, and that they would buy, the north 120 feet of said lot, also a strip 17 feet in width east and west and running north from the south line of said lot at Main street to a line running east and west 128 feet south of the north line of said lot, and from thence a strip 19 feet in width adjoining the

north end of said 17-foot strip and extending thence north
to an east and west line 120 feet south of and parallel with
the north line of said lot, the 19-foot strip to extend one
foot east of and one foot west of the east and west lines
of the 17-foot strip extended northward.   Appellee was to
furnish within twenty days a writing particularly locating
the 17-foot and 19-foot strips, reserving to himself and the
subsequent purchaser of the south part of said lot a perpet-
ual right of way over the east five feet and the west five feet
of the north 120 feet of lot 6, to be used in common with
the owner or owners of the north part of the lot, and also
the right to build and maintain in perpetuity a stairway
from the first to the second floor of the building to be
erected on the south part of lot 6, on the south 37 feet of
the 17-foot strip.   Appellee also reserved four inches on
either side of the 17-foot strip for foundation walls, and
all the space over the 17-foot strip 13 feet above the floor
at the south line of said strip for the purpose of a build-
ing to be erected on the south half of said lot.   Appellee
also agreed to erect the office building thereon with all con-
venient speed and to plaster the walls on either side of the
17-foot strip and to construct a ceiling and roof over the
strip, with the right in the Spanoples and their successors
in title to face, trim, decorate or otherwise use the walls
and ceiling one-half in depth in connection with the north
half of lot 6.   In pursuance of said agreement the Span-
oples started to erect the Majestic Theatre and completed
the foundation.   Appellee completed the construction of the
office building.   For the purpose of furnishing ingress to
and egress from the said theatre in process of construction
and to be used afterwards for that purpose, appellee left
in the office building a passageway which is 13 feet high
and very near 17 feet in width from wall to wall, which
runs from the south line of lot 6 near the east side of the
building to the south line of the north 120 feet of said lot.
The office building is several stories high and the space

above the 17-foot passageway is devoted to offices, which have been and are rented to different occupants. Beneath the 17-foot passageway is a basement. The building has been completed and occupied by tenants of appellee since February 1, 1915.

On March 23, 1917, another agreement was entered into between appellee and the Spanoples, by which the agreement for the purchase and sale of the property aforesaid was canceled and all liabilities of either party thereto released, and the portion of the building on the north 120 feet of lot 6 was thereafter to be the property of appellee. From that time until March 31, 1917, the date of the lease involved in this suit, there was no contractual relation existing between appellee and the Spanoples. On March 31, 1917, appellee and John Spanople entered into the agreement or lease in question, the material portions of which read as follows:

"That the said party of the first part, in consideration of the covenants of the said party of the second part hereinafter set forth, does by these presents lease to the said party of the second part the following described property, to-wit: The north one hundred and twenty (120) feet of lot No. six (6), in block six (6), in Wheelock's addition to the city of Quincy, Adams county, State of Illinois, reserving to said party of the first part and the subsequent owner or owners of the part of said lot lying south of the north one hundred and twenty (120) feet of said lot a perpetual right of way over the east five (5) feet and also the west five (5) feet of the north one hundred and twenty (120) feet; * * * and also the following described property, to-wit: A strip seventeen (17) feet in width east and west, running north from the south line of said lot six (6) at Main street, in said city, parallel with the east line of said lot six (6), and commencing eighteen (18) feet and eleven (11) inches west thereof, to a line running east and west one hundred and twenty-eight (128) feet south

of the north line of said lot, and from thence a strip nineteen (19) feet in width adjoining the north end of said seventeen (17) foot strip, and extending thence north to an east and west line one hundred and twenty (120) feet south of and parallel with the north line of said lot, said nineteen (19) foot strip to extend one (1) foot east and one (1) foot west of the east and west lines of said seventeen (17) foot strip, being the passageway left by said party of the first part upon his premises. .* * * The said party of the second part, his heirs or assigns, during the continuance of this lease to have the privilege to purchase the premises hereby leased, with use in common as mentioned above, for the sum of seventeen thousand dollars ($17,000) cash."

By other terms of the lease the lessee was to pay a monthly rental of $85 and was to pay the taxes and assessments against the north 120 feet and the 17-foot and 19-foot strips during the continuance of the lease. The lease also provides that in the event a theatre is built on the north part of said lot, then the right is to be given to place exits in the building where needed, and that the passageway aforesaid is to be used in common by the occupants of the buildings.

On August 23, 1917, John Spanople assigned said lease and option to purchase to appellant, James H. Andrews, a lawyer residing in Kewanee, Illinois, for $24,500. On September 1, 1917, appellant applied to appellee for a conveyance of the property, tendered to him $17,000 and demanded a deed to the premises, insisting on appellee conveying to him not only the north 120 feet of said lot, but also the fee in the 17-foot strip from the bottom to the top of the building. He refused to accept a deed to the north 120 feet subject to the reservations in the contract or lease and the conveyance of the passageway through the building, which appellee offered to convey. The tender was left with a bank in Quincy, with notice to appellee that the money would remain in the bank for two or three days, to be delivered

295–8

to him upon his delivering a deed to the premises as appellant had demanded.

The first point argued is that the court erred in overruling objections to the evidence offered by appellee to show the contractual and other relations existing between appellee and the Spanoples prior to the execution of the lease and option in question with respect to the buildings to be placed on lot 6 and the intention of the parties in constructing the passageway. Appellant was not prejudiced by the admission of that evidence, the principal parts of which were properly admitted and considered. The trial was before the court. Appellant was the assignee of John Spanople, and he took the assignment of the lease and option subject to all defenses that might be interposed against Spanople. An assignee of a contract for the purchase of land does not occupy the position of an innocent purchaser, but, in the absence of estoppel or other special circumstances, takes only the rights of his assignor, and he takes subject to any defenses that might be made against his assignor. (39 Cyc. 1667.) All the evidence so offered was proper to show that the understanding between appellee and Spanople when they entered into the lease and option contract was that the 17-foot strip was intended to be used simply as a passageway and was not to be conveyed in fee, and that the passageway was already constructed and defined by walls, floor and the ceiling. The proof conclusively sustained the findings of the master and the trial court upon these questions. The lease also describes the 17-foot and 19-foot strips as to their location and dimensions on the surface of said lot, and in substance states that the strips are a passageway in the first story of the Majestic building above the surface. In other words, the property leased and optioned under this description is the passageway left by appellee in said building. Appellant, according to the terms of his lease, was only entitled to a deed to this passageway under the second description in the

lease. This passageway was completely located as afore-
said, and appellee's occupancy by his tenants there, and the
passageway itself, were complete notice to appellant as to
just what he was purchasing and its location, when con-
sidered with the terms of the lease and option contract.
He was not entitled to a conveyance in fee simple of the
17-foot strip as demanded by him, and even the language
of the lease and option cannot be so construed.

Appellant insists that there is no open passageway left in
the building which answers to the description given in the
lease and option contract by the words and figures used to
describe its boundaries. This contention is based upon the
fact that the open space or passageway through the Ma-
jestic building is but little more than 14 feet wide at the
south end in the clear and only a fraction over 17 feet wide
at the north end, owing to the fact that the pilasters sup-
porting the floor above project somewhat into the passage-
way on each side, as do also the stairway, elevator shaft,
etc. As before indicated, the passageway through the build-
ing was already completed and in its present condition
when the lease and option contract were entered into. It
had been accepted and rent paid on the premises by John
Spanople according to the terms of the lease and option
contract, and it was that passageway in its completed con-
dition that the lease and option contract purported to de-
scribe as an actual subject of the lease. Spanople could
not, under any circumstances, have maintained a suit for
specific performance upon the terms demanded by appel-
lant, and appellant, as his assignee, cannot. *Mack* v. *Mc-
Intosh,* 181 Ill. 633.

We do not think the language in the lease and option
contract leaves it doubtful as to the property rights to be
conveyed by appellee to John Spanople, as already indicated,
but if the language of the contract were such as to leave
the intention of the parties in doubt or uncertain as to its
meaning a court of equity would not decree specific per-

formance. (*Zakrzewski* v. *Fisher,* 278 Ill. 557.) There is no theory upon which it could be considered equitable to enforce the conveyance of a strip through the entire building aforesaid according to the demands of appellant. Specific performance is not a matter of right but rests in the sound discretion of the court. (*Sugar* v. *Froehlich,* 229 Ill. 397.) Even if we were forced to construe the contract or lease according to the contention of appellant by reason of a careless or unintentional wording of the contract by the scrivener, the circumstances in the case would justify the refusal of a decree for specific performance. The right to specific performance depends upon the circumstances in each case, and where it appears that it would be entirely inequitable to enforce the terms of a contract it will not be done. *Godwin* v. *Springer,* 233 Ill. 229.

The decree of the trial court is right, and it is affirmed.

*Decree affirmed.*