(No. 17041.—Reversed and remanded.)
AUGUST BEHRENDT, Appellee, *vs.* JOSEPH A. ACOCELLA *et al.* Appellants.

*Opinion filed February 18, 1926.*

1. MORTGAGES—*when a deed must be taken to be a mortgage—specific performance.* Where a husband and wife execute a warranty deed to premises owned by the wife and at the same time deliver to their grantee a promissory note upon his agreement in writing to re-convey the premises upon payment of the note the deed must be taken to be a mortgage, only; and in a suit for specific performance brought by a party to whom the husband, after contracting with the grantee for a re-conveyance, contracted to sell the property, the devisees of the wife will be entitled, by filing a cross-bill, to a decree dismissing the original bill and ordering a re-conveyance of the premises to them.

2. SPECIFIC PERFORMANCE—*assignee of contract for conveyance takes only rights of his assignor.* The assignee of a contract for the purchase of land, in the absence of estoppel or other special circumstances, takes only the rights of his assignor and subject to any defenses that may be made against his assignor.

3. SAME—*husband's assignee cannot claim that title was taken in wife's name to avoid creditors.* Where the legal title to property is conveyed to a wife and both husband and wife join in a conveyance to a grantee, who, in turn, contracts for a re-conveyance to the husband, alone, a party to whom the husband assigns his contract for a re-conveyance cannot claim that the husband was the beneficial owner because the title was taken in the name of the wife to avoid judgments and actions pending against the husband, as neither the husband nor any of his assigns can enforce any right against the wife's title on the ground that it was fraudulently put in her to delay creditors.

4. DEEDS—*execution of quit-claim deed is not evidence of consent to contracts in regard thereto.* The signing and acknowledgment of a quit-claim deed by a wife are not evidence of consent to contracts in regard thereto but not made in reliance upon the deed, of whose terms there is no evidence the wife had knowledge.

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

JACOB LEVY, (J. M. GWIN, of counsel,) for minor appellants.

JOHN SONSTEBY, for other appellants.

ARTHUR W. DIXON, for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county awarding specific performance of two contracts for the conveyance of certain real estate in the city of Chicago and dismissing a cross-bill.

There was practically no dispute as to any of the material facts. The premises in controversy were conveyed by Henry Schroeder in fee simple on May 16, 1915, to Mary Acocella, the wife of Joseph A. Acocella. Joseph began the construction of a building on the premises, and on January 19, 1916, the two obtained a loan of $4000, evidenced by two notes, one for $300, payable January 19, 1920, and one for $3700, payable January 19, 1921, the payment of which was secured by a trust deed to William C. Regelin, trustee. At the same time they executed their notes for a further indebtedness of $1000, represented by thirty-two notes for $30 each and one for $40, payable one each month, commencing May 1, 1916, and to secure their payment executed a trust deed on the premises in question to A. R. Fricke, trustee. On April 10, 1916, Mary and Joseph A. Acocella conveyed the premises, subject to these two incumbrances, by warranty deed to Fricke. All these instruments were duly recorded within a few days after their execution. On August 29, 1917, A. R. and Dorothy A. Fricke, his wife, entered into a written agreement with Acocella to convey the premises to him for a consideration of $5500, of which $4000 was to be paid by the assumption of the incumbrance for that amount which has been mentioned, and $1500 was to be paid in forty-one installments, forty for the sum of $25 each, due on the first day of each month,

commencing October 1, 1917, and one for $300, due February 1, 1921, all bearing six per cent interest, payable monthly. The vendors covenanted to convey to the vendee in fee simple, clear of all incumbrances, except as provided in the agreement, by a good and sufficient special warranty deed, in consideration of his making the payments and performing the covenants by him agreed to be performed. Afterward, on March 3, 1920, Acocella entered into an agreement in writing with August Behrendt for the sale of the premises, whereby Behrendt agreed to purchase the premises for the sum of $7500, of which $500 was then paid in cash, $2120 was to be paid within five days after the title of the premises had been examined and found good, provided a good and sufficient general warranty deed conveying the title to Behrendt should then be ready for delivery, $3700 by the assumption of a first mortgage for that amount, and $1180 due on the contract between Fricke and Acocella. Acocella covenanted to convey to Behrendt a good and merchantable title by general warranty deed from A. R. and Dorothy A. Fricke and a quit-claim deed from Acocella, the purchaser to be entitled to the rents from the date of the deed and assume all taxes and assessments levied after the year 1919, and any unpaid special taxes or special assessments levied for improvements not yet made. An abstract of the title was furnished by Acocella, and on April 6, 1920, Behrendt, the purchaser, Nowicki, an attorney who had examined the abstract for Behrendt, Fricke, Acocella and Edward L. Gehrke met in the office of the Logan Square Bond and Realty Company for the purpose of closing the transaction. Behrendt had in his possession $3600 in cash, ready to pay the money due on the contract and obtain the deed to the property, and he was ready, able and willing to comply with the contract on his part, as all of those present were informed. Acocella had a quit-claim deed signed and acknowledged in Alabama by his wife, which he had not yet signed. The abstract

showed certain judgments against Mary and Joseph A. Acocella, and there was some conversation in regard to the deposit of the money by Acocella with the Logan Square Trust and Savings Bank until the judgments were satisfied of record. This was satisfactory to Acocella, but Fricke then said, "This office is entitled to a commission," and Acocella replied, "I do not have to pay the commission," and refused to pay it. Fricke had in his possession a special warranty deed signed by his wife, conveying the premises in question to Behrendt, the purchaser. Behrendt objected to the special warranty deed, claiming that he was entitled under his contract with Acocella to a general warranty deed, and Fricke claiming that under his contract with Acocella he was bound only to give a special warranty deed. Both of these claims were correct. Acocella had given to Behrendt what he said was a copy of the contract between himself and Fricke. This copy contained a provision that Fricke and his wife should convey the title of the premises by good and sufficient warranty deed, and Behrendt had no knowledge until the meeting on April 6 that Fricke had contracted to convey by a special warranty deed, only. Acocella refused to complete the transaction because of Fricke's claim for a commission, and Fricke tore up the special warranty deed which had been signed by his wife. Nothing more occurred at this time. At a later meeting Behrendt's attorney agreed to accept the quit-claim deed from Acocella and wife and the special warranty deed from Fricke and wife and close the transaction, but owing to the fact that Fricke had claimed the commission, Acocella refused to go to Fricke's office and would not close the deal unless the money was paid to Acocella. Behrendt would not pay the money to Acocella without receiving the deed from Fricke and his wife. Fricke had no beneficial interest in the transaction but was acting only as the representative of the Logan Square Trust and Savings Bank, of which he was an employee, simply holding the title in trust. On

April 6, 1921, Behrendt filed his bill against Acocella, Fricke, Dorothy A. Fricke and the Logan Square Bond and Realty Company for the specific performance of the contracts and the conveyance to him of the premises by a special warranty deed by the Frickes and a quit-claim deed by Acocella. The defendants answered, and the cause was referred to a master in chancery, who on July 10, 1922, made his report finding the facts as they have been stated and recommending a decree for the specific performance of the two contracts.

Mary Acocella had died in June, 1920, leaving a will, by which she devised the premises in question to her two children, John and August Acocella, who were minors. This will from the time of her death was in the possession of Joseph A. Acocella, though he did not disclose it in his answer or in his testimony before the master. At the time of the conveyance by Mary and Joseph A. Acocella of the premises by warranty deed to Fricke they had executed a note for $250, payable to their order and endorsed by them, due on or before six months after date at the Logan Square Trust and Savings Bank, and delivered it to Fricke, and he had executed an instrument in writing stating that Mary and Joseph A. Acocella had given to him a warranty deed to the premises in question to secure their note of $250 and interest, and agreeing that they should have the option of re-purchasing the premises at any time within six months by the payment of the note and interest and any other charges that might be against the property at the time of purchase. This agreement, together with the note, which bore upon its face the notation, "Paid June, 1916," signed by Fricke, was also in the possession of Acocella but was not mentioned in his answer or disclosed in his testimony. After the filing of the master's report Acocella filed in the probate court of Cook county the will of Mary Acocella, which was admitted to probate on October 30, 1922, and letters testamentary were issued to John Tellone. On Oc-

tober 31, 1922, a motion was made on behalf of Tellone, as executor of the will and guardian of the children, who were minors eleven and twelve years of age, for leave to answer in the cause. The motion was allowed and answer filed, and later a cross-bill, which as amended on August 9, 1923, alleged that Mary and Joseph A. Acocella were not married; that she died owning the real estate in question in fee simple, subject to the trust deed for $4000 to William C. Regelin and $1000 to Fricke; that she executed the warranty deed to Fricke as security only for a note of $250, and that Fricke at the same time executed a written instrument acknowledging that the deed was given to secure the payment of the note; that the note was paid and demand made on Fricke to re-convey the premises. The amended cross-bill further charged that Fricke and his wife and Acocella entered into a conspiracy to deprive her of any interest in the premises and that the contract to sell to Behrendt was in pursuance of that conspiracy; that Behrendt knew that Mary Acocella was the owner of the property and no one else had any right to sign any agreement to convey any interest in the premises; that she was not informed of such conspiracy, and that the market value of the premises is more than $14,000. The cross-bill prayed that the defendants be required to account for the rents and profits of the premises; that the deed of April 10, 1916, to Fricke be declared to be a mortgage for the sum of $250 and interest and that it be decreed that the note has been paid; that a release of such trust deed be given by Fricke and wife; that the agreement of August 29, 1917, as well as the agreement of March 3, 1920, be declared null and void and be canceled and surrendered; that a receiver may be appointed, and that the cross-complainants may have such other and further relief as equity may require. Upon the filing of the cross-bill the cause was referred again to the master and additional evidence was taken. Most of the facts which it tended to prove have already been stated.

Joseph A. Acocella testified that no marriage ceremony took place between himself and Mary Acocella. His answer to the original bill admitted that she was his wife, he had testified on a previous hearing before the master that she was his wife, they had lived together as husband and wife for fourteen years before her death, they had executed as husband and wife the two mortgages on the property in question and the warranty deed to Fricke, and the quit-claim deed executed and acknowledged by Mary which Joseph produced at the meeting of April 6, 1920, purported to be the deed of Mary and Joseph, her husband. Whether it is material or not, we agree with the finding of the master, on the evidence in this record, that Mary Acocella was the wife of Joseph. The warranty deed of April 10, 1916, was a mortgage, only. Fricke had no right to convey the premises except in accordance with the terms of the defeasance which he had given. Both he and Acocella knew that Acocella's wife was the owner of the property, and the contract between them for a conveyance of the title to Acocella, alone, was fraudulent as to her. Acocella's contract with Behrendt, so far as it contemplated a conveyance of the title held by Fricke, was only an assignment of Acocella's contract with Fricke. Although Behrendt had no notice of the defect in Fricke's title, yet he does not occupy the position of an innocent purchaser, for the assignee of a contract for the purchase of land, in the absence of estoppel or other special circumstances, takes only the rights of his assignor and subject to any defenses that may be made against his assignor. *Andrews* v. *Mohrenstecher,* 295 Ill. 109.

The appellee contends that the legal title to the property was conveyed to Mary Acocella, at the time of its purchase, as a convenience to Joseph A. Acocella because there were judgments and actions pending against him, and that he has always been the beneficial owner. Whatever may have been the reason, title was conveyed to Mary Acocella and she has been the owner of record ever since. The appellee

claims through Joseph, and neither he nor Joseph can enforce any right against her title on the ground that it was fraudulently put in her for the purpose of delaying Joseph's creditors.

The appellee contends that Mary Acocella, if she was the real owner of the premises, knowingly permitted Joseph A. Acocella to manage and control the property, to collect the rents and represent himself as the owner, to enter into a contract for a conveyance of the premises to the appellee and to collect and receive $600 from him on such contract. The evidence does not sustain the claim that these things were done with the knowledge of Mary Acocella. In order to estop the appellants from insisting upon their legal or equitable rights, the burden is on the appellee of showing that Mary Acocella made representations or did or permitted acts inconsistent with the rights now claimed by the appellants. The evidence does not show any such representations or acts. They do not show that she had any knowledge either of the contract between Fricke and Acocella or the contract between Behrendt and Acocella. Acocella's testimony was that Mary asked him several times whether the property had been re-conveyed to her but that he never told her that it had not been re-conveyed. He testified that he told her that he thought it was conveyed to her; that he told her that they wanted to sell the property to him, alone, and she said that if he did anything crooked she would have him in jail; that he did not show the contract to her; that he went South with her in 1918, and they were gone during 1918, 1919 and 1920; that she was very sick and under a physician's care; that she came back in March, 1920, and died in June; that in March she was in Birmingham, Alabama, and her condition of health was very bad; that he did not show the contract to her or tell her its contents. It is true that she signed and acknowledged in Birmingham on March 29, 1920, for an expressed consideration of $10, the quit-claim deed which was to be exe-

cuted by her husband also to Behrendt, and this fact is some evidence that she had been informed by her husband that he had made or was negotiating a sale to Behrendt. It is not evidence that she was informed of the terms of the contract with Fricke or the contract with Behrendt. Those contracts were not made in reliance upon the deed, and the signing and acknowledgment of the deed were not evidence of her consent to contracts of whose terms there is no evidence that she had knowledge.

No particular weight can be given to the testimony of Acocella, but there is no evidence of the things which he denies, and those are matters the burden of proving which is on the appellee. He has failed to sustain this burden, and the decree on the original bill requiring specific performance of the contracts must therefore be reversed. So far as the cross-bill is concerned, the evidence shows that the deed of April 10, 1916, to Fricke, was merely a mortgage to secure the note of Mary and Joseph A. Acocella for $250, with interest, due six months after date, and that the note has been paid. There is no evidence that there are any other charges which are liens against the property by reason of this mortgage. The complainants in the cross-bill are therefore entitled to a release of this mortgage, and the decree dismissing the cross-bill must therefore also be reversed. The warranty deed and the written defeasance constituting a mortgage, the agreement for an option to re-purchase amounts simply to an agreement to re-convey the premises upon the performance of the condition, and the obligation of the mortgagee is to re-convey to the mortgagor, Mary Acocella. Since she has died the re-conveyance must be made to her devisees.

The decree is reversed and the cause is remanded to the circuit court, with directions to enter a decree dismissing the original bill and granting relief on the cross-bill by requiring Fricke to execute and deliver to John and August Acocella a quit-claim deed conveying to them all interest

conveyed to him by the deed of Mary and Joseph A. Aco-
cella dated April 10, 1916, and recorded in the recorder's
office of Cook county in book 13886 of records, page 155,
as document 5,846,552, and requiring an accounting of the
rents and profits of the premises.

*Reversed and remanded, with directions.*