## Lewis Mitchell

### *v.*

## George E. King *et al.*

1. Equity—*specific performance.* A person who asks for specific performance must be able to show that his conduct has been clear, honorable and fair.

2. Same—*falsehood—deceit.* It has never been admissible, that one man should enforce a contract to the disadvantage of another, in a court of equity, which he had obtained through falsehood, duplicity, or a betrayal of confidence.

3 STATUTE OF FRAUDS—*who may set it up.* When a man makes a parol contract for the sale of land, it is binding on him, at least morally, and it is optional with him, alone, to set up the technical defense that it was not in writing.

4. Where the agent of A had, by verbal agreement, sold land belonging to A, to B, and, before A had been notified of the sale, C went to A and falsely represented to him that he was sent by his agent to see about buying the land; and C knew of the sale by A's agent, and withheld the knowledge from A, and induced A to sell the land to him and execute a deed for the same, and deposit such deed, to be held as an escrow, until the balance of the purchase money was paid, and A, as soon as notified of the previous sale by his agent, confirmed the same, and executed a deed to B, and the prior deed was recorded; upon a bill filed by C for a specific performance, and a cross bill filed by B to cancel the record of the deed to C, and that C surrender possession: *Held,* that the bill filed by C was properly dismissed, and the relief sought by the cross bill of B was properly granted.

APPEAL from the Circuit Court of Ford county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This was a bill for a specific performance of a contract for the sale of land, filed by Lewis Mitchell against George E. King and Simon S. Brucker. The facts necessary to an understanding of the case are stated in the opinion of the court.

Messrs. POLLOCK & SAMPLE, for the appellant.

Messrs. BLADES & KAY, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Simon S. Brucker, residing at Pontiac, owned a certain two hundred and eighty acres of land in Ford county, which he was anxious to sell. He verbally instructed one George Wolgamot, residing at Watseka, to negotiate a sale for him, giving him no power, however, to make a deed, limiting, in the first instance, the price to $15 per acre, but subsequently instructing him, by letter, that he might sell it at $10 per

acre. About the middle of October, 1871, Wolgamot, as agent of Brucker, entered into a verbal contract with George E. King, whereby he sold the land to him at $10 per acre— agreeing that King should have a few days in which to get the money, when he and Wolgamot would go to Pontiac, pay the money to Brucker, and get his deed. A few days after this, and before King had paid the money or received a deed for the land, he met Lewis Mitchell, who was inquiring in regard to lands for sale. Although they disagree in their version of what then occurred, in our opinion the preponderance of the evidence is, King offered to sell him the land he had bought of Brucker, through Wolgamot, stating that he would have a deed soon, and that he would let Mitchell have the land at one dollar per acre advance on the price he was to pay Brucker. Mitchell offered first, $100, then $150. advance on the price which King was to pay Brucker, and King made some reduction in the price he asked; but no agreement was consummated, and after several further ineffectual efforts, made on different days, to negotiate, the parties had no further discourse with each other on the subject. Mitchell seems then to have gone to Wolgamot and endeavored to buy the land of him. Wolgamot says he informed him the land was sold to King, and, in their conversation, showed him the letters he had received in regard to his selling the land. Afterwards, Mitchell went to Brucker, at Pontiac, which is some fifty or sixty miles from Watseka, and represented to Brucker that he had been sent to him by Wolgamot in regard to the land. Wolgamot, meanwhile, had written to his brother, John Wolgamot, residing at Pontiac, and he had notified Brucker that he had sold the land, but without mentioning to whom. When, therefore, Mitchell informed him he had seen his letter to Wolgamot, that Wolgamot had offered to take $10 an acre for the land, but he thought he might get it from him a little cheaper, he says he supposed, of course, Mitchell was the person to whom Wolgamot alluded as having made the

sale; and upon that hypothesis he entered into negotiation with him. Mitchell did not disclose to Brucker that he knew Wolgamot had sold to King, and the evidence is clear that he represented that he had been sent to Brucker by Wolgamot, when such was not the fact. Brucker and wife then, on the 3d of November, 1871, executed a warranty deed to Mitchell for the land—Mitchell deposited with J. F. Culver & Bro. $100—and it was agreed between the parties that Mitchell was to have the land for $2900, subject to a mortgage and interest amounting to $1041; that the deed was to be kept by Culver & Bro., as an *escrow*, until final payment of the amount agreed on should be made by Mitchell, and the incumbrances on the land, less the $1041, should be released, when it was to be delivered to Mitchell. The $100 deposited with Culver & Co. by Mitchell, was to be forfeited in the event of his failure to comply with the contract. Subsequently, and on the same day, it was further agreed between the parties, that Mitchell assumed the payment of the taxes on the land for the year 1870, for which he was to be credited, the amount being $59.

Four days after this—that is to say, on the 7th day of November, 1871, King and Wolgamot applied to Brucker, informing him of the sale to King. When Brucker learned of this contract, and being satisfied King was entitled to a deed, he made and delivered to him a deed for the land. King paid $100 more than the contract price with Wolgamot, to cover, as was claimed by Brucker, some additional expenses he had been put to.

Some days after the conveyance to King, Mitchell offered to pay Culver & Co. the balance due on his contract with Brucker, but he was notified the land had been conveyed to King.

Mitchell filed his bill for specific performance, praying also that King's title be declared void, etc.

King, after answering, filed a cross bill, (the *escrow* from Brucker and wife to Mitchell having been recorded,) pray-

ing that the record of the *escrow* be canceled, and that Mitchell be required to surrender possession of the land.

The court decreed, dismissing Mitchell's bill, and granting the prayer of the cross bill of King.

We see no cause to disturb this decree.

"A man who calls for specific performance," says Kerr, in his work on Fraud and Mistake, 358, "must be able to show that his conduct has been clear, honorable and fair." When Mitchell went to Brucker, he falsely represented he had been sent to him by his agent, Wolgamot. He knew that agent had then sold the land to King. He withheld this knowledge from Brucker; and it does not lie with him to say the contract with King was not binding under the Statute of Frauds. The contract was binding on Brucker, at least morally; and it was optional with him, alone, to set up the technical defense that it was not in writing. From the subsequent conduct of Brucker, it is manifest, had Mitchell, at the time of their contract, informed him what he himself knew in regard to the sale by Wolgamot to King, Brucker would have refused to entertain the idea of contracting to sell the land to him; indeed, if he had not falsely represented that he had been offered the land for $10 per acre, and been sent by Wolgamot to him in regard to it, it is clear, from the proof, he could not have obtained the contract. He should be satisfied that he has paid nothing, and can, therefore, lose nothing that he is entitled to call his own.

His conduct, as shown by the preponderance of the evidence, is entirely wanting in the essential elements of open, honorable and fair dealing.

It has never been admissible, that one man should enforce a contract to the disadvantage of another, in a court of equity, which he had obtained through falsehood, duplicity, or a betrayal of confidence.

The decree is affirmed.

*Decree affirmed.*