(No. 31873.

JOSEPH FAVATA *et al.*, Appellants, *vs.* EVA J. MERCER *et al.*,
Appellees.

*Opinion filed May 24, 1951.*

DAVID M. JACOBSON, and RALPH E. JACOBSON, both of
Chicago, for appellants.

HARRY A. BIOSSAT, and DILLARD B. BAKER, both of
Chicago, and HENRY I. GREEN, of Urbana, for appellees.

Mr. JUSTICE CRAMPTON delivered the opinion of the
court:

Joseph Favata and one calling himself Emmett Adams
filed this suit in the superior court of Cook County for
specific performance of a contract for the purchase of real
estate. The complaint also prayed that the court set aside
a certain deed conveying the property to subsequent pur-
chasers. The seller, the subsequent purchasers and their
husbands, the trustee under a trust deed, and the company

occupying the property as a tenant were made defendants to the suit. The cause was referred to a master, who recommended a decree be entered in plaintiffs' favor. Defendants' exceptions to the report were sustained by the chancellor, and a decree was entered dismissing the suit for want of equity. Plaintiffs appeal directly to this court, as a freehold is involved.

The evidence discloses that during the period in question the premises were owned by defendant Eva Mercer, and had been occupied by defendant D. M. Kerr Manufacturing Company as a lessee for more than twenty years. The lessee company is engaged in the manufacture and sale of canvas products. Plaintiff Emmett Adams, whose real name is Harry Sheehan, was also engaged in the canvas business and was a competitor of the defendant company. For a long period of time prior to September 15, 1947, he regularly visited defendant's factory several times a week and engaged in conversation with the president of the company, with whom he was well acquainted, and also with the superintendent, neither of whom knew him by any name other than Harry Sheehan. Frequently he came early in the morning and had breakfast with one of them at a nearby lunchroom. They would usually talk about defendant's business and about business conditions in general.

During a visit by Sheehan early in October, 1946, the president of the company mentioned that it was considering a purchase of the building occupied by it, and that, "we thought it would be a good idea to investigate as to whether or not the premises were for sale." Thereafter the plaintiffs Sheehan and Favata came to defendant Eva Mercer, who owned the property, and negotiated with her concerning a purchase of the property, Sheehan representing that his name was Adams. Eva Mercer informed them that the company had the preference on any sale of the building, and that she would do nothing until she saw her attor-

ney. She also said she was interested in getting the highest price for her property. In the meantime Sheehan continued to visit the lessee. During conversations with the company's president, Sheehan observed that the premises were not too valuable and were not worth the $10,000 offered by the former's sisters. In another conversation when the lessee's president observed they were definitely attempting to buy the building and had submitted a contract and deposit, Sheehan replied: "Do you think you are doing the right thing? Do you think that building is worth buying?" On November 25 Eva Mercer met with Favata in her attorney's office, accepted a $500 deposit from him and signed the alleged agreement bearing that date and reading as follows: "Received of Joseph Favata and Emmett Adams, subject to approval of Emmett Adams, check 263741 in the sum of $500.00 earnest-money deposit on 1954-6 W. Grand Ave., Chicago, price of $11,000 subject to title, to be made good in Eva Mercer, a spinster, within 30 days from above date." The instrument was also signed by Joseph Favata. The following day Sheehan signed a letter in his attorney's office which recited that "I hereby approve of the purchase of the premises at 1954-56 W. Grand Ave. pursuant to receipt of Eva Mercer dated 11-25-46 and do hereby authorize you to issue deed to said premises on direction of Joseph Favata." The letter was signed "Emmett Adams," and its contents were communicated by telephone to Eva Mercer's attorney. It is not disputed that, prior to the present transaction, Sheehan had never used the name "Emmett Adams."

On November 27, 1946, the next day, defendant Mercer, through her attorney, sent a written notice to Favata in which she returned the $500 earnest-money deposit and rescinded the contract on the stated ground that there was a tax delinquency outstanding against the property and that title, therefore, could not be made good. She thereafter sold and conveyed the property, for the sum of

$12,000, to Katherine Kasch and Margaret Jones, who were stockholders in the D. M. Kerr Manufacturing Company and sisters of Donald McLaren, president of the company. On April 15, 1947, Favata and Sheehan filed the present complaint, the latter suing by the name of "Emmett Adams." He continued his visits to the company's place of business, however. In May, 1947, he was told that the company had just been served with summons in the suit, but said nothing about the fact that he was a party to it. On September 15, 1947, he had a conversation with Donald McLaren, the company's president, in which the latter discussed the suit and said, "we have been haing difficulty in locating an Emmett Adams, who is one of the main parties." He asked Sheehan if the latter had any idea who Adams might be, and explained he had received a description of Adams, given by Eva Mercer's attorney, which indicated that Sheehan and Adams were the same person. Sheehan then admitted he had been using the assumed name in the transaction. He did not thereafter continue his custom of visiting the company. By leave of court, defendants filed amendments and supplements to their answers, alleging that knowledge of Adams's identity did not come to them until on or about September 15, 1947, and that plaintiffs were guilty of fraud and did not come into equity with clean hands.

To reverse the decree, plaintiffs argue that a fraudulent purpose or intent was not proved by clear and convincing evidence; that the chancellor erred in overruling the master's report, which found there was no fraudulent intent on the part of the plaintiffs; and that specific performance is a matter of right where the contract is entered into fairly. They assert further that the present defense is an afterthought; that the obvious desire of Eva Mercer to favor the other defendants, whether because of the higher price offered by them or because of the long tenancy of the D. M. Kerr Manufacturing Company, was the real reason

for the attempted rescission; that she was not interested in the names of the plaintiffs nor in the nature of their business but was interested solely in getting the highest price for the property; and that the use of an assumed name by one of the plaintiffs did not mislead her nor affect her actions in attempting to sell her property.

It is clear from the evidence, however, that plaintiffs knew Eva Mercer would prefer her tenant in any sale of the property, and that the company was interested in buying it. It is reasonable to infer, also, that plaintiffs realized if Adams's true identity were made known to the lessee of the property, it would prejudice any purchase by them. Despite Sheehan's testimony that he assumed the name of Adams merely to "classify" the transaction in his mind, the circumstances indicate that by disguising his identity he hoped to conceal from the lessee the fact that he was attempting to purchase the property himself. His attempts to discourage any purchase by or on behalf of the company, and, by the use of a false name, to prevent it from learning of his own negotiations with the owner, do not commend themselves to our sense of fair dealing. Even though the misrepresentation may not constitute fraud, the deception resorted to by the plaintiffs is not calculated to appeal with favor to the conscience of the chancellor, and well warranted him in denying specific performance in the exercise of sound discretion. While such relief may not be refused from mere whim or caprice, where there is in the case some substantial element which moves the conscience of the chancellor and makes it appear to him to be unjust to decree the relief sought, it may be denied. See *Godwin* v. *Springer,* 233 Ill. 229, 241.

In suits for specific performance the principles of ethics are given extensive consideration. Such relief will not be decreed unless the agreement has been entered into with perfect fairness and without misapprehension or misrepresentation. (*Cowan* v. *Curran,* 216 Ill. 598.) To prevail,

the plaintiff must show that as to every part of the transaction he was free from any imputation of deceit or sharp practice. He must stand in conscientious relations toward his adversaries, and must not have obtained the agreement by unscrupulous methods, by overreaching, by taking undue advantage of his position, or by concealing important facts, even though his conduct is not actually fraudulent. It is not sufficient that a legal obligation under the contract is proved. As we observed in *Chicago Title and Trust Co. v. Schwartz*, 339 Ill. 184, "Courts may be prevented or deterred from decreeing specific performance of a valid and binding contract by circumstances and contingencies connected with its subject matter, its terms, or the relations of its parties to each other or with third persons, which would not constitute the slightest obstacle or objection to the recovery of a judgment for damages in courts of law." We think, under the circumstances existing in the case at bar, that plaintiffs have failed to show themselves entitled to specific performance as a matter of right. See *Mitchell v. King*, 77 Ill. 462.

There is another reason why the decree below will not be disturbed. In their demand for performance, made prior to bringing suit, the plaintiffs specified that a warranty deed be given. The prayer of the complaint is also for a warranty deed, and in their argument plaintiffs insist they are entitled to such a deed. The alleged contract, however, contains nothing as to the character of the deed by which the property was to be conveyed. There was no agreement on the part of Eva Mercer to convey by warranty deed or to warrant the title to the plaintiffs. The provision that title was to be made good in her contemplates a conveyance which would vest in the plaintiffs an unincumbered fee-simple title. But in order to convey such title it is not necessary that a warranty deed be given. A quitclaim deed is equally as effectual to pass title as a warranty deed with full covenants. (*Morris* v. *Goldthorp*,

390 Ill. 186.) Plaintiffs are, therefore, attempting to compel defendant Mercer to do something different from that which under the contract she had agreed to do. As plaintiffs have elected to take such position there is no relief that equity can give in decreeing specific performance of the contract. *White* v. *Lang,* 401 Ill. 219.

For the reasons discussed, there was no error in dismissing the complaint for want of equity, and the decree of the superior court of Cook County is affirmed.

*Decree affirmed.*