**Donna POPPE, Appellant–Intervener,**

**James C. Jabaay, Petitioner,**

v.

**Cecilia JABAAY, Appellee–Respondent.**

No. 45A03–0304–CV–139.

Court of Appeals of Indiana.

March 10, 2004.

Rehearing Denied June 2, 2004.

James M. Kapitan, Highland, IN, Attorney for Appellant.

Edward R. Hall, Merrillville, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

## STATEMENT OF THE CASE

Appellant–Intervenor, Donna Poppe (Poppe), appeals the trial court's post-dissolution order allowing Appellee–Respondent, Cecilia Jabaay (Cecilia), to refinance and purchase the marital residence.

We reverse and remand.

## ISSUES

Poppe raises two issues on appeal, which we restate as follows:

1. Whether the trial court abused its discretion by accepting Cecilia's offer to purchase and refinance the marital residence thereby modifying its Decree of Dissolution of Marriage when there was no evidence of fraud; and

2. Whether the trial court abused its discretion by limiting Poppe's damages to attorney's fees and costs when it rescinded, *sua sponte*, a valid contract for the sale of real estate.

## FACTS AND PROCEDURAL HISTORY

On May 21, 1999, James C. Jabaay (James) filed his Verified Petition for Dissolution of Marriage. After the entry of provisional orders and pre-trial hearings, the Lake County Circuit Court set the final hearing for April 16, 2002. Subsequently, on June 6, 2002, the trial court entered its Decree of Dissolution of Marriage. This Decree provided, in pertinent part, that:

13. The marital residence located at 10026 Somerset Drive, Munster, IN 46321 is to be sold at a price mutually agreed upon by the parties, but for no less than [the] appraised value of $230,000.00. [Cecilia] is given until June 15, 2002 to effect a sale by owner in which case if successful, she would receive four percent (4%) of the gross sales price as compensation for her efforts. If [Cecilia] is not successful in selling the property by June 15, 2002, same is to be listed with a mutually agreed upon realtor at a mutually agreed upon price. In the event the parties cannot agree on a realtor or a listing price, or if the property does not sell by October 1, 2002, upon written motion of either party, the [c]ourt will appoint a commissioner to effect the sale.

14. [Cecilia] will continue to have exclusive use and possession of the marital residence until sold. Until October 1, 2002, the parties will equally (50%/50%) share responsibility for the mortgage payment. If the house does not sell and close by October 1, 2002, [Cecilia] will be responsible for the entire mortgage payment until the property is sold and closed.

(Appellant's App. p. 98).

On August 2, 2002, James filed a Verified Petition for Rule to Show Cause

against Cecilia. After a pre-trial conference, the trial court entered its Order of November 5, 2002, appointing Attorney Karen Szumlanski (Szumlanski) as the trial court's commissioner for the sale of the marital residence. Although both Cecilia and James submitted offers to purchase the home, these were rejected by Szumlanski for noncompliance with the provisions of the dissolution decree. On February 13, 2003, Poppe tendered an offer to purchase the marital residence for $230,000.00. On February 17, Szumlanski accepted Poppe's offer and set a closing date for March 31, 2003.

Subsequently, Cecilia filed a series of motions attempting to both modify the Decree of Dissolution and block the commissioner's sale of the marital residence to Poppe. On February 20, 2003, the trial court ordered Cecilia to submit proof of her financial commitment to refinance and purchase the marital residence to Szumlanski by March 7, 2003. On March 10, 2003, Poppe filed a Motion to Intervene and a Motion to Set Aside Prior Order. On March 13, 2003, Szumlanski stated in her Response to Cecilia's motions that instead of a copy of a loan commitment, Cecilia had merely submitted a loan pre-approval form. On March 14, 2003, pursuant to a hearing on the motions, the trial court granted Poppe's motion to intervene, but denied her motion to set aside the trial court's prior order. On March 21, 2003, the trial court conducted a hearing on the remaining issues. On April 15, 2003, the trial court issued its Order for Sale of Marital Residence, which declared, in pertinent part, that:

1. "Both [Cecilia] and [Poppe] have presented offers to purchase the marital residence to [Szumlanski] for the sum of [t]wo [h]undred and [t]hirty [t]housand [d]ollars ($230,000.00). Each offer is ready to close immediately.

2. [Cecilia] was apparently capable of financing the purchase of the marital residence at the time of the hearing held on March 14, 2003 but did not submit the appropriate documents. Moreover, the [c]ourt appointed [c]ommissioner, [Szumlanski], has received written offers from [Cecilia] that did not comport with the Decree entered in this case and has experienced difficulty in dealing with [Cecilia], who has been acting as her own counsel.

3. Through no fault of [Poppe], but due to the conduct of [Cecilia], [Poppe] has incurred attorney fees and expenses regarding her good faith offer to purchase. Such expenses to date equal [o]ne [t]housand [f]our [h]undred and [e]ighty-[s]even [d]ollars and [f]ifty [c]ents ($1,487.50).

4. Cecilia and the parties' daughter still reside in the marital residence.

5. It was always this [c]ourt's intention to provide each of the parties adequate opportunity to purchase the marital residence before an outsider or non-party.

6. It is therefore [o]rdered that the [c]ourt's [c]ommissioner should sell the marital residence to [Cecilia] for the sum of [t]wo [t]housand and [t]hirty [t]housand [d]ollars ($230,000.00). In addition to said sum, [Cecilia] shall also pay [Poppe's] costs of [o]ne [t]housand [f]our [h]undred and [e]ighty-[s]even [d]ollars and [f]ifty [c]ents ($1,487.50) upon closing. [Cecilia] shall also pay [Szumlanski's] fees at the time of closing. Judgment accordingly.

(Appellant's App. pp. 14–6).

Poppe now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Modification of Decree of Dissolution

First, Poppe contends that the trial court abused its discretion by ordering the sale of the marital home to Cecilia. Specifically, Poppe maintains that, despite the absence of fraud, the trial court nevertheless modified the property division provisions in the original decree of dissolution of marriage. Conversely, Cecilia argues that the trial court did not abuse its discretion because it did not modify the dissolution of marriage decree by awarding the marital residence to her. Further, Cecilia claims that even if the trial court modified its original decree, it was justified in doing so in order to reflect the true intention of the trial court at the time the original judgment was entered.

When reviewing a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion. *See Wells v. Collins,* 679 N.E.2d 915, 916 (Ind.Ct.App.1997). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *See id.* An abuse of discretion also occurs when the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute. *See id.*

At the outset we note that Ind. Code § 31–15–7–9.1 provides that orders concerning a property division may not be revoked or modified, except in the case of fraud. *See* I.C. § 31–15–7–9.1; *Joachim v. Joachim,* 450 N.E.2d 121, 122 (Ind.Ct.App. 1983). A strong policy favors the finality of marital property divisions, whether the court approves the terms of a settlement agreement reached by the parties or the court mandates the division of the property among the parties. *See Dusenberry v. Dusenberry,* 625 N.E.2d 458, 461 (Ind.Ct. App.1993). One purpose of this policy is to eliminate vexatious litigation which often accompanies the dissolution of a marriage. *See Lankenau v. Lankenau,* 174 Ind.App. 45, 365 N.E.2d 1241, 1244 (1977).

However, while there is no authority under the statute for the court to modify, rescind, or grant relief from the division of property under a dissolution of marriage decree, the statute does not preclude relief from judgment as provided under Ind. Trial Rule 60(B). *See id.* at 1243; *See also Dusenberry,* 625 N.E.2d at 461. Thus, notwithstanding our review of this case under the statutory limitations on the modification of a dissolution decree, we must also consider whether the trial court's order may be sustained under the provisions of T.R.60(B).

### A. Statutory limitations

Initially, Poppe contends that the trial court abused its discretion because it modified its original dissolution decree without finding any evidence of fraud, as mandated under I.C. § 31–15–7–9.1. We agree.

In its original dissolution of marriage decree, the trial court stipulated elaborate and detailed instructions for the sale of the marital residence. Our review of the decree reveals that the trial court allowed Cecilia a first opportunity to sell the residence to avoid realtor costs. However, the decree further provided that if Cecilia was unsuccessful in selling the real estate within a specified time period, and the parties failed to agree on a mutually acceptable realtor, the trial court would appoint a commissioner to effect the sale of the marital home.

In its Order of October 2, 2002, the trial court appointed Szumlanski as its commissioner, and stated, in pertinent part, that:

1. [Szumlanski] is appointed commissioner to sell the marital residence as soon as possible for not less than [its] fair market value as appraised of $230,000.00 and to distribute the proceeds pursuant to the parties' Decree of Dissolution. A copy of which is attached hereto and incorporated herein.

2. Commissioner Szumlanski shall have full power and authority to execute any and all documents relative to the sale including, but not limited to, a [r]ealtor's [l]isting [a]greement, [c]ommissioner's [d]eed [c]onveying [t]itle to the [p]roperty, and all related closing documents.

(Appellant's App. p. 96). The record reveals that after Szumlanski accepted her appointment, she solicited offers on the real estate from both Cecilia and James. Although both parties submitted offers, none was accepted; Cecilia's multiple offers were rejected because they did not conform with the provisions of the dissolution decree.

On February 13, 2003, Poppe tendered an offer, in accordance with the property divisions of the dissolution decree, to purchase the marital home. This offer was accompanied by a notice of a deposit of earnest money and a mortgage credit approval letter from Poppe's lender. The following day, February 14, 2003, Szumlanski notified Cecilia of the receipt of an acceptable offer to purchase the residence, and advised her that "[p]er our phone call this date, there is a very strong buyer who has already received mortgage approval. Upon receipt of the $1000 earnest money, unless I receive another offer with earnest money and loan approval, I will be signing the offer to purchase." (Appellant's App. p. 57). The record is devoid of any evidence that Cecilia responded to this letter, let alone, submitted an acceptable offer.

As a result, Szumlanski executed Poppe's offer on February 17, 2003.

Our review of the record indicates that, as a result of numerous motions filed by Cecilia, the trial court allowed Cecilia until March 7, 2003, to submit proof of her financial commitment to refinance the marital residence. Although Cecilia failed to comply with this offer of proof, the trial court, nevertheless, in its Order of April 15, 2003, ordered the sale of the marital residence to Cecilia, thereby effectively setting aside the commissioner's acceptance of Poppe's offer. Additionally, the trial court stated that "[i]t was always the [c]ourt's intention to provide each of the parties adequate opportunity to purchase the marital residence before an outsider or non-party." (Appellant's App. p. 15).

We agree with Poppe that the trial court, by its Order of April 15, 2003, materially altered the terms of its original dissolution decree. The property division provisions of the decree clearly intended for the marital home to be sold. The express timeline provide for a continuance of the sale from sale by owner, to a mutually approved realtor, to a court appointed commissioner. By stipulating a sale by realtor and empowering the commissioner to list the house on a realtor's listing, the trial court in effect published the sale of the house to the world at large. As such, the trial court never intended to give Cecilia and James an implied right of first purchase. The trial court's subsequent "clarification" Order of April 15, 2003, providing Cecilia with adequate opportunity to purchase the home before an outsider, effectively modified the property division provisions of its original decree.

Regardless, our review of the record indicates that Cecilia had ample opportunity to purchase the marital home prior to Poppe's offer of purchase. Cecilia had four months prior to the appointment of a

commissioner to secure financing. Furthermore, after Szumlanski's appointment, she had an additional three months prior to Poppe's offer to comply with the purchasing terms of the dissolution decree. Thus, Cecilia had adequate opportunity to obtain an acceptable loan commitment.

Therefore, we find that the trial court's "clarification" Order of April 15, 2003 was clearly in violation of I.C. § 31–15–7–9.1, which provides that property division orders can only be modified in the case of fraud. *See* I.C. § 31–15–7–9.1. The trial court failed to make any findings establishing fraud, nor does our review of the evidence reveal any fraudulent action by the parties. *See id.* Consequently, we conclude that the trial court's failure to establish the statutory requirement of fraud constituted an abuse of discretion. *See Wells,* 679 N.E.2d at 916.

### B. Relief from Judgment or Order

Next, we need to determine whether the trial court's Order of April 15, 2003, can be sustained under the provisions of T.R. 60(B). Although a court may sometimes modify its property division decree under T.R.60(B), a court may not do so without a motion by a party and without a hearing. *See Joachim,* 450 N.E.2d at 122; *Lankenau,* 365 N.E.2d at 1243. One seeking relief from judgment has the burden of showing the relief is necessary and just. *See Joachim,* 450 N.E.2d at 122. In this case, Cecilia did not file a motion under T.R.60(B). Consequently, the trial court has no authority to modify its decree under T.R. 60(B). *See id.*

### II. Damages

Lastly, Poppe contends that the trial court erred in limiting her damages to attorney's fees and expenses. Specifically, Poppe alleges that after rescinding the valid contract for the sale of the real estate, the trial court should have awarded her specific performance or damages for loss of bargain.

As a matter of course, Indiana courts order specific performance of contracts for the purchase of real estate. *See Kesler v. Marshall,* 792 N.E.2d 893, 896 (Ind.Ct.App.2003). They do so because each piece of real estate is considered unique, without an identical counterpart anywhere in the world. *See id.* The decision to grant specific performance is a matter within the sound discretion of the trial court. *Ruder v. Ohio Valley Wholesale, Inc.,* 736 N.E.2d 776, 779 (Ind.Ct. App.2000). The judgment of the trial court is given deference because an action to compel specific performance sounds in equity. *Id.* We will only reverse a trial court's decision if it is clearly against the reasonable deductions which may be drawn from the facts and circumstances before the court. *Claise v. Bernardi,* 413 N.E.2d 609, 612 (Ind.Ct.App.1980). To be enforced by specific performance, a contract for the sale of real estate need only be reasonably definite and binding as to its material terms. *Humphries v. Ables,* 789 N.E.2d 1025, 1034 (Ind.Ct.App.2003). A party seeking specific performance of a real estate contract must prove that the contract obligations of that party have been substantially performed or that an offer to do so has been made. *Ruder,* 736 N.E.2d at 779.

In the instant case, the trial court's "clarification" Order of April 15, 2003, effectively rescinded a valid, executed contract between Poppe and Szumlanski. In its Order of October 2, 2002, the trial court granted Szumlanski full power and authority to sell the marital home. On February 13, 2003, Poppe tendered an offer to purchase the real estate, which was accepted by Szumlanski on February 17, 2003. The record reveals that earnest money of $1,000 was deposited in Szumlanski's trust

account. Accordingly, the trial court's modification of the property divisions of the dissolution decree, awarding the marital home to Cecilia, effectively resulted in a *sua sponte* rescission of the contract for the sale of real estate between Poppe and Szumlanski.

As we have previously held, rescission of a contract is not automatically available. *See New Life Community Church of God v. Adomatis*, 672 N.E.2d 433, 438 (Ind.Ct.App.1996). Rather, there must be some basis to support the rescission such as fraud, illegality, or mutual mistake. *See id.* Here, no such ground exists. The trial court, merely by re-writing the original dissolution of marriage decree, rescinded the valid contract between Poppe and Szumlanski. "The law generally allows competent persons the utmost liberty of contracting, and their contracts, when entered into freely and voluntarily, are enforced by the courts." *Id.* (quoting *Mutual Sec. Life Ins. Co. v. Fidelity & Deposit Co. of Maryland*, 659 N.E.2d 1096, 1100 (Ind.Ct.App.1995), *trans. denied*). The trial court, by rescinding the contract for sale of real estate *sua sponte*, interfered with and violated this sacred principle of contract law. As a result, we find that the trial court was not at liberty to interfere with the parties' freedom of contract or to rewrite the contract terms. *See id.*

Further, by depositing earnest money into Szumlanski's trust account, Poppe made a good faith offer to perform the contractual obligations, as specified in the executed agreement for sale of the marital home. *See Ruder*, 736 N.E.2d at 779. Accordingly, the contract was reasonably definite and binding as to its material terms, and thus, specific performance was warranted. *See Humphries*, 789 N.E.2d at 1034. Consequently, we hold that the trial court's refusal to grant specific performance was clearly against the reasonable deductions drawn from the facts and circumstances before the court. *Claise*, 413 N.E.2d at 612. Therefore, we find that the trial court abused its discretion. *See Ruder*, 736 N.E.2d at 779. We remand to the trial court for proceedings consistent with this opinion.

## CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion by accepting Cecilia's offer to purchase and refinance the marital residence thereby rescinding the Contract to Purchase Real Estate entered into by the court appointed commissioner and Poppe. We further find that the trial court abused its discretion by limiting Poppe's damages to attorney's fees and costs, instead of awarding her specific performance.

Reversed and remanded with instructions.

DARDEN, J., and BAILEY, J., concur.