## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 18 2020, 9:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mark K. Phillips
M. Robert Phillips
Phillips Law, P.C.
Boonville, Indiana

ATTORNEY FOR APPELLEE

Jonathan M. Young
Law Office of Jonathan M. Young, P.C.
Newburgh, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas E. Black,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Kristie Humphrey,<br>*Appellee-Defendant.* | May 18, 2020<br><br>Court of Appeals Case No.<br>19A-MI-1423<br><br>Appeal from the Warrick Superior Court<br><br>The Honorable J. Zach Winsett, Judge<br><br>Trial Court Cause No.<br>87D01-1709-MI-1448 |

**Mathias, Judge.**

[1]     Thomas E. Black ("Black") filed a complaint in Warrick Superior Court to quiet title to certain real estate owned jointly between him and Kristie Humphrey ("Humphrey"). The trial court entered judgment in favor of

Humphrey and granted Humphrey's request to partition the property. Black appeals and raises the following issues:

I. Whether the deed should be reformed due to the parties' mutual mistake;
II. Whether Black is entitled to relief under the doctrine of unclean hands; and,
III. Whether Black is entitled to relief under the theory of unjust enrichment.

We affirm.

## Facts and Procedural History

Black and Humphrey met in 2014, and shortly thereafter became romantically involved. Both parties had children from prior marriages ranging in ages from pre-teen to adult.

In 2016, Black began looking at residential properties for investment purposes. During that search, he learned of a residence and approximately twelve acres for sale in Lynnville, Indiana. Black and Humphrey agreed that the home was a good investment and decided to purchase the home with the intent of living in the home together with their children.

Black decided to sell his home in Tennyson, Indiana, and use the proceeds from that sale to purchase the new home in Lynnville. At some point, the parties also discussed selling Humphrey's home in Owensboro, Kentucky, to purchase a parcel of land adjoining the Lynnville home.

Because he was concerned that the Lynnville home might sell to another buyer before he could sell his residence in Tennyson, Black arranged to purchase the

Lynnville property with a bridge loan. United Fidelity Bank was unable to approve the loan relying solely on Black's income. After discussions with the loan officer, the parties believed that the loan would be approved if Humphrey's income was included in the loan application.

[7] Black's realtor told Black that there were legal ramifications of adding Humphrey to the loan application. But Black was determined to buy the Lynnville property as soon as possible, and Humphrey agreed to add herself to the loan application. After Humphrey's income was included on the loan application, the financing was approved. On February 5, 2016, the parties executed an Equity Bridge Loan Note for $400,000. Under the terms of the Note, both parties were obligated to repay the loan amount to the Bank. The parties also executed a mortgage listing "Thomas Black and Kristie Humphrey as Joint Tenants with Full Rights of Survivorship." Ex. Vol. 4, Ex. C. The Warranty Deed was executed by the previous owner on February 11 and recorded on February 17, 2016. The deed lists the parties as "joint tenants with full rights of survivorship." Ex. Vol. 3, Ex. I.

[8] Shortly after closing on the Lynnville property, the parties and their children moved into the home. The parties opened a joint bank account when they began living together, and the parties agreed to be married.

[9] Black's former residence in Tennyson sold thereafter, and Black used the proceeds from the sale to pay the bridge loan in full. The parties received a notice of payoff dated December 19, 2016. After receiving the notice, the parties

discussed the fact that the Lynnville property was deeded to them jointly with rights of survivorship. Black did not want to make any changes to the nature of the deed.

[10] In February 2017, Humphrey and her son moved out of the Lynnville residence and returned to her home in Owensboro, Kentucky. The parties continued their romantic relationship until July 2017. After the relationship ended in July 2017, Black asked Humphrey to execute a quitclaim deed for the Lynnville property. Humphrey initially agreed to do so if Black would deliver the deed in person. Black did not deliver the deed in person, and Humphrey did not sign the deed Black mailed to her.

[11] On September 14, 2017, Black filed his complaint to quiet title to the Lynnville property. Six days later, under a separate cause number, Humphrey filed a complaint for damages and partition of real estate.[1] The trial court issued an order consolidating these cases on November 6, 2017.

[12] A bench trial was held on April 23, 2019. After the evidence was heard, the parties were permitted to submit written memoranda to the trial court by May 3, 2019. On May 31, 2019, the trial court issued the following order:

> 1. Plaintiff Black and Defendant Humphrey are the joint owners of a particular piece of real estate, commonly referred to as 2799

---

[1] Black later filed a complaint requesting return of the engagement ring he gave to Humphrey when he asked her to marry him. Neither party appeals the trial court's order concerning the disposition of the engagement ring.

Holder Hill Road, Lynnville, Indiana consisting of a residence and approximately 12.09 acres.

2. Plaintiff Black seeks to quiet title to the subject real estate. Specifically, Plaintiff Black seeks an Order from the Court that effectively removes Defendant Humphrey from the deed, thereby resulting in Plaintiff Black as the exclusive owner.

3. Plaintiff Black contends that the joint tenancy between the parties was a result of a mistake. Plaintiff Black wanted to buy a house, but the Bank would not approve a loan with his name solely on the loan. Plaintiff Black added Defendant Humphrey to the loan application and subsequent deed to the subject real estate for the purpose of receiving financing for the subject real estate. Plaintiff Black was warned against doing this by his friend/Realtor because of possible ramifications of adding his fiancé[e] to the deed of the subject real estate. Plaintiff Black's intention was to add Defendant Humphrey to the loan, and therefore the deed to the subject real estate, so Plaintiff Black and Humphrey could buy the home before someone else bought the home. Plaintiff Black's plan worked. Plaintiff Black and Defendant Humphrey were approved for the loan, and he achieved the goal of buying the home before anyone else could.

4. Plaintiff Black did not meet his burden of proof that the title should be quieted because of mistake.

5. Plaintiff Black also contends that the joint tenancy was created as a result of "unclean hands." Plaintiff Black failed to meet his burden of proof that there was any misconduct on the part of Defendant Humphrey which should cause the title to be quieted.

6. Plaintiff Black also argues unjust enrichment. He argues that since Defendant Humphrey did not pay any money whatsoever for the subject real estate, that it would be unjust for her to now claim a one-half interest in the subject real estate just because her name was added to the deed in order to obtain a "bridge" loan.

7. In the case at bar, there is a deed showing a joint tenancy between the parties. Plaintiff Black's position is that there was a constructive contact, an understanding between the parties, that Defendant Humphrey would sign away her rights to the subject real estate at some point in the future. No such agreement was written in the deed or any other written contract or instrument.

8. There was insufficient evidence presented that Defendant Humphrey committed fraud, that she misrepresented anything in order to become a joint tenant, or that she breached a duty arising out of a confidential or fiduciary relationship. As such, Plaintiff Black's remedy of unjust enrichment must fail.

9. There was a clear, written contract conveying the subject real estate in question from Plaintiff Black alone, to Plaintiff Black and Defendant Humphrey, as joint tenants with the rights to survivorship.

10. There was no written agreement that [] Defendant Humphrey would reconvey the subject real estate back to Plaintiff Black at some time in the future.

11. There was no clear oral agreement, at or about the time [] the subject real estate was conveyed to Plaintiff Black and Defendant Humphrey as joint tenants, that Defendant Humphrey would deed the subject real estate back to Plaintiff Black at some point in the future. Defendant Humphrey stated something to the effect of []I would never take the subject real estate away from your kids, or I would never take from your family[]. This statement is ambiguous, can be construed a number of ways, and is not a clear agreement to deed . . . the property back [to] Plaintiff Black upon the satisfaction of the mortgage of the subject property.

12. Even if there was a clear oral agreement between the parties that the subject real estate would be held by Defendant Humphrey in trust until the subject real estate was paid off and then reconveyed to Plaintiff Black, that agreement would be otherwise unenforceable because of the Statute of Frauds.

Appellant's App. pp. 38–39. The trial court denied Black's complaint to quiet title and entered judgment in favor of Humphrey on her complaint to partition of real estate.

[13] Black now appeals.

## Standard of Review

[14] The trial court here entered written findings and conclusions and we apply a two-tiered standard to review the court's judgment.

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Carmichael v. Siegel*, 754 N.E.2d 619, 625 (Ind. Ct. App. 2001) (citations omitted).

# Discussion and Decision

Black challenges the trial court's judgment in several respects. First, he argues that he met his burden of proving that he was entitled to quiet title in the Lynnville property on the theories of mistake and unclean hands. He also argues that the trial court erred when it concluded that he was not entitled to judgment on the theory of unjust enrichment.

## I. Mistake

First, Black argues that "there is no doubt that the deed, subject to this action, must be reformed by this Court because not only was it drawn by mistake, but it also conveyed an interest to Humphrey that was not intended to be conveyed by Black." Appellant's Br. at 10. Generally, "to succeed in a reformation action a party must show either mutual mistake or fraud by clear and convincing evidence." *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 771 (Ind. Ct. App. 2003).

Black relies on *Wright v. Sampson*, 830 N.E.2d, 1022, 1028 (Ind. Ct. App. 2005), in which our court held that "a deed given as a gift can be reformed if the party seeking reformation of the deed proves by clear and convincing evidence that a unilateral mistake was made in the execution of the deed." A "unilateral mistake is a sufficient ground for reformation of a voluntary conveyance of property if the mistake can be clearly proved." *Id.* (citation omitted). Black's reliance on *Wright* is misplaced because, in this case, the property was not deeded to Humphrey as a gift. And there is no evidence of any mistake in

drafting the deed. As a matter of fact, both Black and Humphrey knew that the purchase was made possible only through Humphrey's credit and co-application on the loan and that the deed was drafted declaring that the property was owned by the parties as joint tenants with rights of survivorship. The parties discussed this fact, and Black was aware of the legal ramifications of owning the property with Humphrey as joint tenants with rights of survivorship.

## II. Unclean Hands

[18] Black argues that the deed should be reformed because Humphrey has "unclean hands. The doctrine of unclean hands is an equitable tenet that demands one who seeks equitable relief be free of wrongdoing in the matter before the court. *Ruder v. Ohio Valley Wholesale, Inc.*, 736 N.E.2d 776, 780 (Ind. Ct. App. 2000). The alleged wrongdoing must have an immediate and necessary relation to the matter being litigated. *Id.* For the doctrine of unclean hands to apply, the misconduct must be intentional. *City of Mishawaka v. Kvale*, 810 N.E.2d 1129, 1136 (Ind. Ct. App. 2004). The purpose of the doctrine is to prevent a party from reaping benefits from his or her misconduct. *Ruder*, 736 N.E.2d at 781. "The doctrine is not favored by the courts and is applied with reluctance and scrutiny." *Hardy v. Hardy*, 910 N.E.2d 851, 857 (Ind. Ct. App. 2009).

[19] There is no evidence to establish that Humphrey committed misconduct by agreeing to purchase the Lynnville property with Black when he was unable to secure the property because his income was not sufficient to obtain the loan. And Black cannot claim that he was unaware that the property was deeded to

the parties as joint tenants with rights of survivorship.[2] Humphrey agreed to enter into the loan and purchase agreements with Black because she believed that the Lynnville property was a good investment for both of them. The doctrine of unclean hands does not apply to the circumstances in this case.

### III.   Unjust Enrichment

[20]   Black also argues that the trial court's order "granting Humphrey's request for partition of the Holder Hill Property unjustly enriched her because she did not contribute a single cent to the" Lynnville property. Appellant's Br. at 21.

> A claim for unjust enrichment "is a legal fiction invented by the common law courts in order to permit a recovery ... where the circumstances are such that under the law of natural and immutable justice there should be a recovery ..." "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." To prevail on a claim of unjust enrichment, a claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust.

*Zoeller v. East Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009) (citations omitted). Where, "under the law of natural and immutable justice

---

[2] Black's claim that Humphrey was a sophisticated borrower with legal expertise in property matters because she had prior employment at a law firm, and used her superior knowledge to her advantage in this case, is not supported by the record. Moreover, being well-informed is not misconduct. And Black cannot establish that Humphrey has "unclean hands" by virtue of a statement she made well after the parties entered into the loan agreement. There is no evidence of misconduct on Humphrey's part that resulted in the property being deeded to the parties as joint tenants with rights of survivorship.

there should be a recovery as though there had been a promise" enforceable in contract, the law will imply a contract where in fact none existed. *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991) (citation omitted). But "[w]hen the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law." *Zoeller,* 904 N.E.2d at 221.

[21] To recover for unjust enrichment, the plaintiff must show that (1) he rendered a measurable benefit to the defendant at the defendant's express or implied request; (2) he expected payment from the defendant; and (3) allowing the defendant to retain the benefit without restitution would be unjust." *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012). Equitable principles prohibit the unjust enrichment of a person who accepts the unrequested benefits provided by another despite having the opportunity to decline those benefits. *Bright v. Kuehl*, 650 N.E.2d 311, 316 (Ind. Ct. App. 1995).

[22] The parties entered into a mortgage contract with the Bank for the purchase of the Lynnville property based on Humphrey's credit combined with Black's credit, and the accompanying deed was issued to both parties. It is undisputed that Black used his funds to pay off the bridge loan for the Lynnville property after he sold the Tennyson property, and Humphrey did not make any financial contribution toward the purchase of the Lynnville property.[3]

---

[3] However, Humphrey financially contributed to the household during the year the parties cohabitated.

[23] After concluding that the property would be a good investment and home for their families, Humphrey agreed to enter into the loan agreements to obtain the Lynnville property. Black asked her to do so because he desired to purchase the property as quickly as possible. Moreover, Black was advised that adding Humphrey to the loan application and deed would have legal consequences.[4]

[24] As a co-borrower on the loan application and deeded owner, Humphrey risked complete liability for the mortgage and other expenses associated with the property, such as property taxes. The mortgage executed by both parties listed them as joint tenants with full rights of survivorship. When a joint tenancy is created, each tenant acquires an equal right to share in the enjoyment of the land during their lives. *Grathwohl v. Garrity*, 871 N.E.2d 297, 301 (Ind. Ct. App. 2007) (citation omitted).

[25] After Black paid the bridge loan in full, he could have requested that Humphrey execute a quitclaim deed, if that was his intention. But he did not do so. Therefore, as a deeded owner, Humphrey remained obligated for expenses associated with owning the Lynnville property.

[26] Black's claim that Humphrey has been unjustly enriched runs contrary to the principle that "the creation of a joint tenancy relationship entitles each party to

---

[4] Black argues that the trial court's finding that he was "warned" about the legal consequences of adding Humphrey to the loan application and deed is not supported by the evidence. While the term "warned" might not be warranted by the evidence admitted at trial, Black was advised by his realtor that his action would have legal ramifications. *See* Tr. p. 17.

an equal share of the proceeds of the sale upon partition." *Cunningham v. Hastings*, 556 N.E.2d 12, 14 (Ind. Ct. App. 1990). "Equitable adjustments to cotenants' equal shares are allowed when the cotenants hold the property as tenants in common, not when they hold as joint tenants." *Id.* (citation omitted). "A joint tenancy relationship confers equivalent legal rights on the tenants that are fixed and vested at the time the joint tenancy is created." *Id.* at 13.

[27] While Humphrey may arguably receive a windfall under the trial court's order in this case, Black was only able to purchase the property with Humphrey because of her credit and knowing that they would be co-owners of the property, even if Black exclusively used his funds to pay off the mortgage. For all of these reasons, we conclude that he is not entitled to relief under the theory of unjust enrichment.

## IV. Statute of Frauds

[28] Finally, throughout his brief, Black cites to Humphrey's testimony that after their engagement ended, she told Black that she would sign a quitclaim deed to transfer her interest in the Lynnville property to him.[5] Humphrey argues that even if her statement is construed as a promise to transfer real estate, it is unenforceable pursuant to the Statute of Frauds.[6]

---

[5] Humphrey agreed to do so if he would deliver the deed in person, which Black did not do.

[6] Black argues that Humphrey did not raise this argument in the trial court. But Humphrey raised the issue of the Statute of Frauds in her post-trial memorandum to the trial court.

For very good reasons, the Statute of Frauds requires land contracts to be in writing. *Huber v. Hamilton*, 33 N.E.3d 1116, 1117 (Ind. Ct. App. 2015), *trans. denied*. The statute provides, in relevant part:

> (b) A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:
>
> * * * * *
>
> (4) An action involving any contract for the sale of land.

Ind. Code § 32-21-1-1.

Here, there was no written contract at any time either prior to or after the parties purchased the Lynnville property in which Humphrey agreed to transfer her interest in the property to Black. Black's argument that the parties had an oral agreement regarding disposition of the Lynnville property is unenforceable under the Statute of Frauds.[7]

---

[7] In his reply brief, Black cites to the doctrine of promissory estoppel in an attempt to circumvent the Statute of Frauds. *See Hrezo v. City of Lawrenceburg*, 934 N.E.2d 1221, 1231 (Ind. Ct. App. 2010) (explaining that a party relying on promissory estoppel must establish the promisor made a promise with the expectation that the promise will rely thereon which induces reasonable reliance by the promisee), *trans. denied*. If the evidence supported Black's claim that Humphrey agreed to deed the Lynnville property back to him when he paid the loan in full, Black had the opportunity to prepare a quitclaim deed for Humphrey's signature during their engagement. But Black did not do so.

# Conclusion

[31] As the trial court noted in its order, application of the law in this case leads to a "distasteful" factual conclusion. *See* Appellant's App. p. 42. But, for all of the reasons discussed above, we affirm the trial court's order denying Black's complaint to quiet title and granting Humphrey's request to partition the Lynnville property.

[32] Affirmed.

Kirsch, J., and Bailey, J., concur.